MOAG *v.* STATE OF INDIANA

[No. 27,401.    Filed February 10, 1941.]

*Foley & Foley* and *Harding & Harding,* all of Crawfordsville, for appellant. .

*Samuel D. Jackson,* Attorney General, and *James K. Northam,* Deputy Attorney General, for the State.

SHAKE, J.—Appellant was indicted for being an accessory before the fact to the crime of making a false entry in the records of a bank. He was tried by a jury and convicted and he has appealed, assigning that the

trial court erred in overruling his motion for a new trial. The specific propositions relied upon by the appellant may be grouped for consideration as follows: (1) The insufficiency of the evidence; (2) error in the admission and exclusion of evidence; and (3) error in giving and refusing certain instructions. The first proposition requires a statement of the charge and a review of the evidence.

It was alleged in the indictment that on August 7, 1934, and long prior thereto, the Tippecanoe Loan and Trust Company was a loan, trust, and safe deposit company incorporated under the laws of Indiana, with its principal office and banking house in the City of Lafayette; that Margaret A. Cheney was the duly elected, qualified, and acting secretary-treasurer of said company; that on and prior to the above date the company had and kept a certain record book called "Daily Financial Statement," for the purpose of showing in detail the financial condition both as to resources and liabilities of said trust company at the close of banking business on each day; that on said August 7th, Miss Cheney made up a statement of the financial condition of the company for that day and recorded it in said book (a complete copy of the entry being set out in the indictment); that by said statement it appeared that the company owned and possessed miscellaneous bonds and stocks of the value of $632,886.42; that the aforesaid entry was false and known to be false to Miss Cheney when it was made and entered; and that on August 7, 1934, the appellant unlawfully and feloniously counseled and encouraged the commission of the crime imputed to Miss Cheney in the indictment.

The charge is predicated on Acts 1933, ch. 103, § 1, p. 689, § 10-1713, Burns' 1933, § 2479, Baldwin's 1934, which is as follows:

"Any person engaged in the business of banking, or any officer, director, agent or employee of any person, firm or corporation engaged in the banking business in this state, who shall knowingly make, or cause to be made, any false entry in any book or record kept in any such bank or trust company, shall be deemed guilty of a felony, and upon conviction thereof shall be fined in any sum not to exceed one thousand dollars ($1,000), or be imprisoned in the state prison for any determinate period of not less than one (1) year or more than five (5) years, or both."

The evidence is not substantially in dispute. It appears that the trust company operated as a going concern for the last time on August 7, 1934. During that day, the bank had been ordered closed by the Department of Financial Institutions, and on the 8th of August a representative of the department took charge before opening time. When the representative took over, he discovered that the daily financial statements had not been made up for about a week, and at his suggestion Miss Cheney compiled and supplied these, including the one for August 7th, upon which the charge was based.

The appellant urges that under the undisputed evidence the trust company was not "engaged in the banking business," in the sense contemplated by the statute, at the time the alleged false statement was made, because it had ceased operation and was under the control of the Department of Financial Institutions.

Statutes defining public offenses are to be strictly construed and this rule must be applied to the statute upon which this prosecution is based, including the clause "corporation engaged in the banking business" found therein. If the evidence does not show that Miss Cheney was acting as an officer of the trust company and that the company was engaged

in the banking business at the time Miss Cheney made the alleged false entry, the judgment of conviction cannot stand. We are not without authorities as to the meaning of "banking business" as these words have been used from time to time in the statutes of this state. " 'The business of banking, as defined by law and custom, consists in the issue of notes payable on demand, intended to circulate as money where the banks are banks of issue; in receiving deposits payable on demand; in discounting commercial paper; making loans of money on collateral security; buying and selling bills of exchange; negotiating loans, and dealing in negotiable securities issued by the government, state and national, and municipal and other corporations.' " *First Nat. Bank* v. *Turner, Treas.* (1900), 154 Ind. 456, 460, 57 N. E. 110, 112; *Merica* v. *Burget* (1905), 36 Ind. App. 453, 461, 75 N. E. 1083, 1086; *Davis* v. *Sexton, County Treasurer* (1936), 210 Ind. 138, 153, 200 N. E. 233, 240. Recently, in considering the construction to be given to the clause "every bank or banking company," appearing in the Constitution of this state, we said that a corporation authorized to engage in the banking business could not be regarded as within the definition "after the liabilities have become fixed, the assets are frozen, and the bank has ceased to operate as such." *State ex rel. Dept. of Financial Institutions* v. *Hardy* (1941), *ante* p. 79, 30 N. E. (2d) 974, 978. The conclusion appears inevitable that the Tippecanoe Loan and Trust Company was not engaged in the banking business on August 8, 1934, when Miss Cheney made the entry for August 7th, with which we are concerned, for the reason that at that time said company had ceased operations and was in charge of a representative of the Department of Financial Institutions.

In *State* v. *Trook* (1909), 172 Ind. 558, 561, 88 N. E. 930, 931, this court considered a charge of subornation of perjury based on an alleged violation of a ■ statute requiring the owner or a partner of a private bank "transacting a banking business" to make verified semi-annual reports to the Auditor of State. In holding the affidavit insufficient, the court said:

"The report set out in the charge against appellee was made of the date of May 20, 1907, and sworn to June 18, 1907. The Auditor of State had no control over any so-called bank not authorized according to law to transact a banking business. The law expressly states that the reports are required only of those transacting a banking business under the provisions of the act. An allegation that the bank in question was transacting business under the act of 1905, *supra,* was material and necessary. No such allegation appears, and the affidavit must be held insufficient in this respect. *Losee* v. *Bullard* (1880), 79 N. Y. 404.

"The affidavit should have shown not only that the bank named had been chartered under the private banking act, but also that the owners were operating and transacting a banking business under the provisions of that act on May 20, 1907, at the time the alleged false report was made. No such allegation is found in this affidavit, and hence no sufficient showing that the report set out was one required by law to be made. It could easily occur, as suggested by counsel, that a report would be made after a bank had ceased to do business. *Kirkland* v. *Kille* (1885), 99 N. Y. 390, 2 N. E. 36."

While in the above case the court was passing upon the charge, what was said there applies with equal force to the sufficiency of the evidence to sustain a charge, and we consider the decision as controlling with respect to the matter here under consideration.

The appellee has attempted to avoid the conclusion we have reached by a somewhat ingenious contention. We quote from the State's brief:

". . . the record shows that the false entry was probably made by Miss Cheney on the morning or sometime during the daytime of August 8, 1934. It is the rule in Indiana that a legal day begins at twelve o'clock midnight and continues until the same hour the following night."

*Benson* v. *Adams* (1879), 69 Ind. 353, 354, 35 Am. Rep. 220, 221, is cited by appellee, where it is said:

"A day is the unit of time. It commences at 12 o'clock P. M. and ends at 12 o'clock P. M., running from midnight to midnight. In the division of time throughout the world, we believe this is regarded as the civil day. When the word 'day' is used in a statute or in a contract, it means the twenty-four hours, and not merely the day as popularly understood, from sunrise to sunset, or during the time the light of the sun is visible."

The rule is correctly stated in the above quotation, though the same result might have been attained by simply saying that a day begins with the passing of midnight and continues until the succeeding midnight; so August 7th began with the passing of 12 o'clock p. m. of August 6th and continued for a 24-hour period thereafter. We are unable to follow the State's reasoning when it says:

"So in a strict legal sense, the morning and daytime part of the day designated as August 8, 1934, was a part of the legal day of August 7, 1934. . . . Under this rather strict view, while the Department had in fact sent a special representative to the Trust Company on the morning of August 8, 1934, its effective possession of the Trust Company's property and business did not obtain until midnight of that day. . . ."

It is true that time is not of the essence of the offense charged, which is tantamount to saying, in practical effect, that the state was entitled to show that the offense was committed within the period of limitations immediately preceding the return of the indictment. There is no evidence in the record, however, that Miss Cheney made any false entry at any time other than after the trust company ceased to be engaged in the banking business; nor are we impressed with the argument that there was no showing that the trust company permanently ceased to engage in business on August 7th. It is true, as suggested, that the period during which a bank is closed may be only temporary and that it may subsequently reopen, but if it does reopen it could hardly be said that it had not been closed, and the evidence in the cause leaves no doubt that the trust company was not operating at the time Miss Cheney made the entry in question.

Since the error discussed requires that the judgment be reversed, it is not necessary to extend this opinion.

The judgment is reversed, with directions to sustain the appellant's motion for a new trial.

NOTE.—Reported in 31 N. E. (2d) 629.