ATTORNEY FOR APPELLANTS
Ronald E. Weldy
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE ISTA
Eric M. Hylton
James B. Chapman II
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE
AFSCME COUNCIL 62
William R. Groth
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
David L. Swider
Susan Oliver
Indianapolis, Indiana

Robert W. Rund
D. Michael Wallman
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE
INDIANA SCHOOL BOARDS ASSOCIATION
Julie M. Slavens
Indianapolis, Indiana

_____

## In the
## Indiana Supreme Court

_____

No. 49S02-0606-CV-242

TABATHA J. NAUGLE AND SANDRA M.
CAIN, ON BEHALF OF THEMSELVES AND
OTHERS SIMILARLY SITUATED,

*Appellants (Plaintiffs below),*

v.

BEECH GROVE CITY SCHOOLS,

*Appellee (Defendant below).*

_____

Appeal from the Marion Circuit Court, No. 49C01-0402-PL-490
The Honorable Theodore M. Sosin, Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0505-CV-472

_____

**April 27. 2007**

**Boehm, Justice.**

We hold that the term "days" as used in the Wage Payment Statute refers to business days and not calendar days. We also hold that (1) our reasoning in Brownsburg Community School

Corp. v. Natare Corp., 824 N.E.2d 336 (Ind. 2005) does not prevent the application of the Wage Payment Statute to school corporations; (2) there is no school powers statute that precludes application of the Wage Payment Statute to school corporations; (3) there is no generic good faith defense to the Wage Payment Statute; and (4) there is no requirement within the Ten-Day Rule of the Wage Payment Statute that the employee request or demand wages.

**Facts and Procedural History**

Beech Grove City Schools ("Beech Grove") is a public school corporation located in Beech Grove, Indiana. Tabatha J. Naugle and Sandra M. Cain were employed by Beech Grove as custodians during 2003.

Prior to 2003, Beech Grove paid its employees twenty-six times in each calendar year based on pay periods of two weeks. Payments were made seven calendar days (five business days) after the end of each pay period. Beech Grove adjusted its payroll schedule to resolve two issues in 2003. First, in that year there were twenty-seven pay dates instead of the usual twenty-six. This anomaly occurs every seven years. Second, several employees requested that they receive their paychecks on the Wednesdays before the four-day Thanksgiving and Fall Recess breaks, rather than on the Mondays following the breaks. Under the previous payroll schedule, Beech Grove could not satisfy these requests because it would have had insufficient time—only three workdays after the pay period—to prepare and issue the payroll before the breaks.

To correct the extra pay period and meet these employee requests, Beech Grove implemented a new payroll schedule beginning on July 11, 2003. The first pay date in July 2003 was moved from July 4 to July 11. The new payroll schedule provided for the employees to receive their wages fourteen calendar days (ten business days) after the end of each pay period instead of the previous seven calendar days (five business days). Under this new payroll schedule, Beech Grove had twenty-six pay dates in 2003 instead of twenty-seven and was able to pay employees on the Wednesdays before the two breaks. The only complaint Beech Grove received about the new schedule was from a single employee who mistakenly thought that he would lose one week of pay. Beech Grove discontinued the new system on July 9, 2004 and reverted to the previous procedure of paying employees seven calendar days (five business days) after the end of each pay period.

Naugle voluntarily resigned from her employment at Beech Grove on October 24, 2003, and Cain was terminated on February 6, 2004. On February 18, 2004, Naugle and Cain filed suit against Beech Grove, alleging that Beech Grove had violated the Wage Payment Statute by failing to pay their wages within the time the statute required.[1] Naugle and Cain initiated this claim as a class action and requested actual wages, liquidated damages, and attorney fees as provided under the damages provision of the Wage Payment Statute. The parties, with the approval of the trial court, agreed to defer the issue of class certification until the issue of liability was resolved.

The Wage Payment Statute provides that "[p]ayment shall be made for all wages earned to a date not more than ten (10) days prior to the date of payment." Ind. Code § 22-2-5-1(b). Naugle and Cain moved for partial summary judgment on the issue of Beech Grove's liability for violating this "Ten-Day Rule." Beech Grove filed a cross-motion for summary judgment, arguing that (1) the Ten-Day Rule requires a demand for payment before penal damages and attorney fees may be assessed but no demand was made; (2) the term "days" in the Ten-Day Rule means business days rather than calendar days; (3) Beech Grove is a political subdivision and, as such, is not subject to the Wage Payment Statute; (4) Beech Grove is not subject to punitive damages and attorney fees under the doctrine announced in Brownsburg Community School Corp. v. Natare Corp., 824 N.E.2d 336 (Ind. 2005), reh'g denied; and (5) the Wage Payment Statute does not apply because Beech Grove acted in good faith. The trial court denied the plaintiffs' motion for partial summary judgment and granted Beech Grove's cross-motion for partial summary judgment on each of the grounds advanced by Beech Grove.

Naugle and Cain appealed. The Court of Appeals held that the trial court wrongly interpreted "days" to mean business days instead of calendar days. Nevertheless, it affirmed, concluding that under Brownsburg public school corporations were not employers subject to the Wage Payment Statute. Naugle v. Beech Grove City Schs., 840 N.E.2d 854 (Ind. Ct. App.

---

[1] The plaintiffs also initiated a claim under the Wage Claims Statute. That statute states in pertinent part: "[w]henever any employer separates any employee from the pay-roll, the unpaid wages or compensation of such employee shall become due and payable at regular pay day for pay period in which separation occurred . . . ." Ind. Code § 22-2-9-2(a). We have noted the differences between the Wage Payment Statute and Wage Claims Statute. St. Vincent Hosp. and Health Care Ctr., Inc. v. Steele, 766 N.E.2d 699, 704-05 (Ind. 2002). Claimants may proceed under the Wage Payment Statute by filing a complaint. In contrast, the Wage Claims Statute requires that a wage claim be submitted to the Department of Labor for administrative enforcement. Id. at 705; I.C. § 22-2-9-4(a). Because no administrative proceedings have been pursued, the plaintiffs' contentions under the Wage Claim Act are not before us.

3

2006).  The Court of Appeals did not address the other grounds advanced by Beech Grove in support of the trial court's ruling.  We granted transfer.[2]  2006 Ind. LEXIS 570 (Ind. June 30, 2006).

## Standard of Review

Upon reviewing the grant or denial of summary judgment, we use the same standard of review as the trial court.  Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Poznanski ex rel. Poznanski v. Horvath, 788 N.E.2d 1255, 1258 (Ind. 2003) (citing Ind. Trial Rule 56(C); Tom–Wat, Inc. v. Fink, 741 N.E.2d 343, 346 (Ind. 2001)).  All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party.  Troxel v. Troxel, 737 N.E.2d 745, 748 (Ind. 2000) (citing Shell Oil Co. v. Lovold Co., 705 N.E.2d 981, 983-84 (Ind. 1998)).  The review of a summary judgment motion is limited to those materials designated in the trial court under Trial Rule 56(C).  Id.

## Application of the Wage Payment Statute

In St. Vincent Hospital and Health Care Center, Inc. v. Steele, 766 N.E.2d 699, 703 (Ind. 2002), we held that the Wage Payment Statute governs both the frequency and amount an employer must pay its employee.  See I.C. §§ 22-2-5-1 to 22-2-5-3.  Subsection 1(a) provides that "[e]very person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, *if requested*, the amount due the employee."  (emphasis added).  The Ten-Day Rule appears in subsection 1(b) and also imposes a requirement as to the timing of wage payment.  An employer who fails to make payment of wages to any employee as provided in Indiana Code section 22-2-5-1 is subject to liquidated damages and attorney fees.  I.C. § 22-2-5-2.  As explained below, we do not agree with all of the five independent reasons why Beech

[2] On March 27, 2006, Naugle and Cain filed a motion to strike portions of Beech Grove's Brief in Response to Petition To Transfer and the Indiana School Boards Association's Brief as Amicus Curiae in Response to Petition To Transfer.  The Motion to Strike is granted as to Beech Grove's Brief in Response to Petition To Transfer and denied as to the Indiana School Boards Association's Brief as Amicus Curiae in Response to Petition To Transfer.  Because our decision on the merits of this cause does not turn on the challenged portions of these briefs, there is no need for further discussion of this motion.

4

Grove contends it was not liable under the Wage Payment Statute, but we agree that Beech Grove did not violate the statute.

A. *Brownsburg v. Community School Corp. v. Natare Corp.*

Beech Grove contends that this case is controlled by the reasoning of this Court in Brownsburg Community School Corp. v. Natare Corp., 824 N.E.2d 336 (Ind. 2005), reh'g denied. Beech Grove contends that it is a public school and therefore it is not subject to the Wage Payment Statute because the General Assembly did not intend for public school corporations to be subject to statutory liquidated damages. The trial court agreed with that argument, and the Court of Appeals affirmed. Naugle, 840 N.E.2d at 858-59. We do not agree that Brownsburg applies to this case.

In Brownsburg, a supplier of prefabricated pools sued a school corporation, an architect, and a swimming pool consultant, alleging the three conspired in violation of the Indiana Antitrust Act to exclude the supplier from consideration as a supplier for a swimming pool construction project. The supplier sought treble damages, costs, and attorney fees under the Antitrust Act. The school corporation moved for judgment on the pleadings, alleging it was not a "person" as that term was used in the Antitrust Act and therefore it was not an entity subject to the civil treble damages under that statute. Brownsburg, 824 N.E.2d at 338. The Court of Appeals held the school corporation was a "person," as that term was defined in the Antitrust Act, and therefore could sue and be sued under that statute. Id. We held that the Brownsburg school corporation was a "person" that could sue under the Antitrust Act, but it was not liable for treble damages under the statute. Id. at 344.

The Court of Appeals, citing Brownsburg, concluded that "[i]t is illogical to suggest that public schools should be subject to treble damages for paying wages four days late, but immune from such penalties when they engage in more serious—quasi-criminal—wrongdoing as in Brownsburg." Beech Grove, 840 N.E.2d at 859. The Court of Appeals held that in the absence of definitions of "person" and "corporation" in the Wage Payment Statute that specifically include school corporations or governmental entities, our reasoning in Brownsburg controlled and excluded governmental units from the Wage Payment Statute. Id.

5

The Wage Payment Statute applies to "[e]very *person*, firm, *corporation*, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana . . . ." I.C. § 22-2-5-1(a) (emphasis added). Indiana Code section 1-1-4-5(17) extends the definition of a "person" to include "bodies politic and corporate." Moreover, Indiana Code section 20-26-2-4 defines a school corporation as "a local public school corporation established under Indiana law . . . ." Thus, Beech Grove is a "person" and a "corporation" as these terms are used in the Wage Payment Statute, just as the school corporation in Brownsburg was a "person" under the Antitrust Act.

Brownsburg did not turn on the definition of "person" under the relevant statute. In Brownsburg, we concluded that "municipal corporations are 'persons' as that term is used in the Indiana Antitrust Act" but nevertheless are not subject to treble damages claims. 824 N.E.2d at 344. The reasons for that conclusion do not apply to the Wage Payment Statute. Municipal corporations are not subject to treble damages under the Antitrust Act because that statute was criminal in nature. At the time of the adoption of the Antitrust Act, the legislature did not contemplate the possibility that a governmental entity might commit a crime. To the contrary, governmental entities were seen as the "victims, not perpetrators" of the acts prohibited by the provisions of the Antitrust Act in issue in Brownsburg. Id. The Wage Payment Statute is not criminal in nature. Nor is there any reason to believe that it was the intent of the legislature to exclude schools from liability under this statute. Schools have always had employees. Unlike the Antitrust Act, which viewed governmental entities as victims, the Wage Payment Statute clearly sees employees, public or private, as the persons to be protected. School employees rely on their wages to the same extent as private employees, and nothing in the Wage Payment Statute supports excluding them from its protection.

We conclude that the Wage Payment Statute applies to school corporations. This holding is consistent with a number of pre-Brownsburg opinions from the Court of Appeals that assumed without specific discussion that the Wage Payment Statute applied to governmental employers. See Abner v. Dep't. of Health of State of Ind. ex rel. Ind. Solders' and Sailors' Children's Home, 777 N.E.2d 778, 784 (Ind. Ct. App. 2002), trans. denied; Cox v. Town of Rome City, 764 N.E.2d 242, 249-50 (Ind. Ct. App. 2002); Schwartz v. Gary Cmty. Sch. Corp., 762 N.E.2d 192, 198 (Ind. Ct. App. 2002), trans. denied; Hendershot v. Carey, 616 N.E.2d 412 (Ind. Ct. App. 1993), over-

6

ruled on other grounds by St. Vincent Hosp. and Health Care Ctr. v. Steele, 766 N.E.2d 699, 703 (Ind. 2002).  But see City of Hammond v. Conley, 498 N.E.2d 48, 53 (Ind. Ct. App.), overruled on other grounds by Osler Inst., Inc. v. Inglert, 569 N.E.2d 636 (Ind. 1991).  The failure of the legislature to change the statute to exclude governmental employers in light of these decisions also supports this interpretation of the statute.  See In re Adoption of Infant Child Baxter, 799 N.E.2d 1057, 1062 (Ind. 2003).

### B. *School Powers Statute*

Beech Grove points to the statutory authority of the governing bodies of school corporations as support for its claim that the Wage Payment Statute does not apply to it.  Specifically, it identifies the authority to "[f]ix and pay the salaries and compensation" of school employees and to "adopt schedules of salaries or compensation."  I.C. § 20-26-5-4(8)(B), (C) (West Supp. 2006).  Beech Grove argues that these school powers preclude application of the Wage Payment Statute to school corporations.  Beech Grove cites no authority for the claim that this general power of a school corporation authorizes it to exercise the power in a manner that contravenes other specific statutes.  As a general proposition, the law does not support Beech Grove's contention.  The usual rule is that the board of school commissioners possesses the powers necessary to carry out its purpose, but the "powers must be exercised subject to the paramount laws of the state."  Bd. of Sch. Comm'rs of Indianapolis v. State, 129 Ind. 14, 26, 28 N.E. 61, 65 (Ind. 1891).  We see nothing in the Wage Payment Statute to cause a different result here.

### C. *Good Faith Exception*

Beech Grove asserts that it has no liability under the Wage Payment Statute because Beech Grove's actions in this case fit within a good faith exception to the Wage Payment Statute.  Beech Grove relies on David A. Ryker Painting Co. v. Nunamaker, 818 N.E.2d 989 (Ind. Ct. App. 2004), opinion vacated by 849 N.E.2d 1116 (Ind. 2006).  In Ryker, the Court of Appeals recognized a good faith exception to the application of the Wage Payment Statute.  The Court of Appeals stated that "the purpose of the Wage Payment Statute is to punish employers for converting their employees' services by stealing their wages" and found "no need to punish an employer that genuinely believes that it has done the right thing in the frequency and amount of compensation it gives its employees."  Id. at 992.  We granted transfer and decided the case on

other grounds. We also noted that we have never addressed whether "a good faith defense" to the Wage Payment Statute exists. <u>Ryker</u>, 849 N.E.2d at 1119 (citing <u>St. Vincent Hosp.</u>, 766 N.E.2d at 701-02 n.2).

Until <u>Ryker</u>, the Court of Appeals had described the language of Indiana Code section 22-2-5-2 as "mandatory." <u>See, e.g.</u>, <u>Valadez v. R.T. Enters., Inc.</u>, 647 N.E.2d 331, 333 (Ind. Ct. App. 1995) (referring to Indiana Code section 22-2-5-2 and stating that "the liquidated damages are mandatory" and "the plain language of the statute makes no exception for late payments"); <u>Osler Inst., Inc. v. Inglert</u>, 558 N.E.2d 901, 905 (Ind. Ct. App. 1990) ("Ind. Code 22-2-5-2 does not contain a good faith provision; its terms are mandatory."). We agree with these opinions of the Court of Appeals that conclude there is no generic "good faith" defense to the Wage Payment Statute. Indiana Code section 22-2-5-2 states

> [e]very such person, firm, corporation, limited liability company, or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter *shall*, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in any suit so brought to recover said wages or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys.

(emphasis added). First, and most importantly, there is no good faith exception in the language of the Wage Payment Statute; rather the statute by its terms mandates compliance. Second, permitting a good faith exception to the Wage Payment Statute would contravene the public policy of the statute to ensure that employers pay their employees' wages in a timely fashion and in the correct amount. Many employees find it essential that they be paid on time to meet current obligations of daily life. Employees often do not have the will or economic staying power to engage in a court battle over relatively small amounts. Without the incentive of liquidated damages and attorney fees, employees may be hesitant to assert claims for violations of the law. If so, a good faith defense would lessen the deterrent effect of the penalty provision of the Wage Payment Statute. In short, the plain language of the statute and the public policy behind it compel us to conclude that there is no good faith exception to the Wage Payment Statute.

D. *The Ten-Day Rule*

1. *Requirement that Employee Request or Demand Wages*

Beech Grove contends that the Ten-Day Rule of the Wage Payment Statute contains an implicit requirement that an employee demand or request the receipt of wages within ten days of the date wages are earned before the penalty provision of Indiana Code section 22-2-5-2 is triggered. Beech Grove argues the plaintiffs have no claim under the Wage Payment Statute because they did not demand or request to be paid within ten days following a pay period. Beech Grove claims that without an implicit requirement for an employee to demand or request a wage payment the Ten-Day Rule impinges upon the parties' constitutional right to contract. For the reasons explained below, we find no such requirement in the Ten-Day Rule of the Wage Payment Statute.

An early version of the Wage Payment Statute imposing a penalty on employers who did not pay employees semi-monthly was held unconstitutional in Superior Laundry Co. v. Rose, 193 Ind. 138, 137 N.E. 761 (1923). Because the statute did not leave employees and employers free to bargain for payment at other times or at longer intervals, this Court found that employers and employees were deprived of their right to contract. Id. at 141; 137 N.E. at 761. This Court has stated that "[l]iberty to contract on one's own terms, to decide for himself his own employment, to buy and sell, to exchange one belonging for another, are among his most valuable and cherished rights." Republic Iron & Steel Co. v. State, 160 Ind. 379, 387, 66 N.E. 1005, 1008 (1903). Thus, "[s]tatutes which have fixed the time for payment of wages have repeatedly been held unconstitutional as abridging the right of freedom of contract unless such statutes made provision for a 'request' or 'demand' of payment by the employee." Standard Liquors v. Narcowich, 121 Ind. App. 600, 604, 99 N.E.2d 268, 269 (1951) (citing numerous cases from this Court).

The current version of the Wage Payment Statute, however, does have a provision for a request or demand of payment by the employee. Indiana Code section 22-2-5-1(a) clearly states that employers "shall pay each employee at least semimonthly or biweekly, *if requested*, the amount due the employee." (emphasis added). There is no reference to a "request" in subsection (b). It therefore seems the legislature intentionally did not incorporate the "if requested" language in the Ten-Day Rule but did include it in the immediately preceding subsection that addresses the length of pay periods. These two subsections do not impose two distinct timing re-

9

quirements. Rather the two subsections operate in concert: parties may freely agree to various pay periods under subsection 1(a). Pope v. Wabash Valley Human Servs., Inc., 500 N.E.2d 209, 213 (Ind. Ct. App. 1986). Subsection 1(b) supplies the maximum time limit within which employees must be paid after the end of the pay period. This interpretation of the rule is consistent with prior Indiana state and federal decisions addressing the Ten-Day Rule. See, e.g., Manzon v. Stant Corp., 138 F.Supp.2d 1110, 1114 (S.D. Ind. 2001); Schwartz, 762 N.E.2d at 197-98. The Ten-Day Rule is in place to ensure that employees receive their pay in a timely fashion and to provide employers adequate time after the agreed upon pay period to calculate wages. Because employers and employees are free to contract for various pay periods under subsection (a), the lack of a demand or request provision in the Ten-Day Rule does not significantly impair the parties' right to contract, and constitutional concerns are satisfied.

Beech Grove contends that this interpretation of the Ten-Day Rule will pose "harsh and illogical consequences," arguing that employers would be deterred from offering a variety of traditional compensation plans and benefits. We disagree. Beech Grove first argues that if we adopt this interpretation "[v]acation pay could no[t] be accrued beyond 10 days after the payroll period in which the services supporting the benefit were provided." There is no legal requirement to compensate for unused vacation time. Williams v. Riverside Cmty. Corr. Corp., 846 N.E.2d 738, 747 (Ind. Ct. App. 2006), trans. denied. But if vacation pay is to be compensated, it is deferred compensation in lieu of wages and is subject to the provisions of the Wage Payment Statute. Id. The time of payment of vacation pay is usually deferred because the accrual of vacation is unknown until termination of the employment. Absent an agreement to the contrary, an employee is not entitled to accrued vacation pay until termination. Mitchell v. Universal Solutions of N.C., Inc., 853 N.E.2d 953, 958 (Ind. Ct. App. 2006) (citing Ind. Heart Assocs., P.C. v. Bahamonde, 714 N.E.2d 309, 311-12 (Ind. Ct. App. 1999)). Vacation pay is therefore not subject to the Ten-Day Rule until termination. See Jines v. Evans Motors, Inc., 292 F.Supp.2d 1130, 1139 (N.D. Ind. 2003). Beech Grove also argues that our interpretation would require that "[t]he many Indiana employers who pay their employees a performance-based bonus and/or commissions on a quarterly or an annual basis [] cease the practice." Many bonuses are not subject to the Wage Payment Statute in the first place. "[A] bonus is a wage if it is compensation for time worked and is not linked to a contingency such as the financial success of the company." Highhouse v. Midwest Orthopedic Inst., P.C., 807 N.E.2d 737, 740 (Ind. 2004) (internal quotation

marks omitted) (quoting Pyle v. Nat. Wine & Spirits Corp., 637 N.E.2d 1298, 1300 (Ind. Ct. App. 1994)). If, however, a bonus is dependent on other factors than the employee's efforts, it is not subject to the Wage Payment Statute. Id. at 740. Even if the compensation can be characterized as a wage, it can be paid by agreement over a longer period. Pope, 500 N.E.2d at 213.

### 2. *Business Days or Calendar Days*

Beech Grove contends that the word "day" in the Ten-Day Rule means business days rather than calendar days. Beech Grove argues that because it paid its employees ten business days (or fourteen calendar days) after each pay period during the payroll schedule at issue it complied with the terms of the Wage Payment Statute. The trial court agreed with Beech Grove, but the Court of Appeals reversed, concluding that our opinion in Moag v. State, 218 Ind. 135, 31 N.E.2d 629 (1941) held that when the word "days" is not defined in a statute as business days the default understanding is calendar days. Naugle, 840 N.E.2d at 857-58.

The Court of Appeals found the following paragraph to establish that the term "days" as used in the Wage Payment Statute referred to calendar and not business days:

> A day is the unit of time. It commences at 12 o'clock P.M. and ends at 12 o'clock P.M., running from midnight to midnight. In the division of time throughout the world, we believe this is regarded as the civil day. When the word "day" is used in a statute or in a contract, it means the twenty-four hours, and not merely the day as popularly understood, from sunrise to sunset, or during the time the light of the sun is visible.

Moag, 218 Ind. at 141, 31 N.E.2d at 632 (quoting Benson v. Adams, 69 Ind. 353, 354, 1879 WL 5982, at *2). In Moag, an employee of a loan and trust company appealed his conviction for the crime of making a false entry in the records of a bank. The employee argued that the false entries were made during the morning or afternoon hours of August 8, and the trust company had ceased its operations on August 7. He argued that because the trust company was not "engaged in the business of banking" when the false entries were made he had not violated the statute. Id. at 138, 31 N.E.2d at 630-31. Quoting the above paragraph from Benson, Moag rejected the State's argument that the morning or afternoon hours of August 8 were part of the legal day of August 7. Id. at 141, 31 N.E.2d at 632. Moag sheds no light on the issue before us. The statute at issue in Moag did not use the term "day," and the case certainly did not address the issue of business days versus calendar days.

Benson, on the other hand, did involve a statute that used the term "days": "On all bills of exchange, payable within this State, whether sight or time bills, three days grace shall be allowed." Benson, 69 Ind. at 355, 1879 WL 5982, at *2. The question in Benson was whether an action on a promissory note could be commenced on the third day of grace. The Court concluded that "day" meant the "entire twenty-four hours" and the obligor "has all of the last day within which to perform his obligation." Id. at 355, 1879 WL 5982, at *2. The Court noted and distinguished cases from other states that allowed actions on promissory notes at the close of usual business hours on the last day of grace. Thus, both Moag and Benson focused on whether a "day" referred to a twenty-four hour period as opposed to the period of daylight. Neither addressed whether "days" in a statute referred to business days or calendar days.

When the meaning of a term in a statute is at issue, we follow several rules of statutory construction. "[W]hen a statute is unambiguous, a court must apply the plain and obvious meaning and not resort to other rules of construction." Sholes v. Sholes, 760 N.E.2d 156, 159 (Ind. 2001) (internal quotation marks omitted) (quoting Brownsburg Area Patrons Affecting Change v. Baldwin, 714 N.E.2d 135, 139 (Ind. 1999)). If the legislature has not defined a word, it is afforded its plain and ordinary meaning. Courts may properly consult English dictionaries to determine the plain and ordinary meaning of words. Ind. Office of Envtl. Adjudication v. Kunz, 714 N.E.2d 1190, 1193 (Ind. Ct. App. 1999). "'Day' may be defined as either 'the mean solar day of 24 hours beginning at mean midnight' or 'the time established by usage or law for work, school, or business.'" Koppin v. Strode, 761 N.E.2d 455, 461 (Ind. Ct. App. 2002) (quoting Merriam Webster's Collegiate Dictionary 294 (10th ed. 1994)). Because there is no single and uniform meaning of "day," the statute requires interpretation. Id.; see also State, Civil Rights Com'n v. County Line Park, Inc., 738 N.E.2d 1044, 1048 (Ind. 2000). "The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result." State, Civil Rights Com'n, 738 N.E.2d at 1048 (citing Riley v. State, 711 N.E.2d 489, 495 (Ind. 1999)). The Wage Payment Statute deals with employment relations that frequently arise in activities that are scheduled and not continuous. If the term "days" in the Ten-Day Rule referred to calendar and not business days, the due dates for many wage payments would fall on Saturdays or Sundays, when most employees do not work. Intervention of holidays would even further shorten the time for payroll preparation, creating the problem that led Beech Grove to alter its pay dates in 2003. Based on these practical considera-

tions, we conclude that the term "days" in the Ten-Day Rule means business days. If the legislature chooses, it can, of course, alter that result.

Finally, Naugle and Cain argue that this interpretation of "days" under the Ten-Day Rule will produce adverse consequences under other Indiana statutes that refer to "days." Our interpretation of "days" in the Ten-Day Rule of the Wage Payment Statute is based on the language and purpose of this statute. It has no particular force in other contexts.

## Conclusion

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Beech Grove.

Shepard, C.J., and Dickson, Sullivan, and Rucker, J.J., concur.

13