Nicole R. SPACEY, Appellant–Plaintiff,

v.

STATE FARM FIRE & CASUALTY COMPANY, Appellee–Defendant.

No. 49A02–0702–CV–141.

Court of Appeals of Indiana.

Dec. 19, 2007.

298

Donald D. Levenhagen, Indianapolis, IN, Attorney for Appellant.

Robert A. Durham, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Appellant–Plaintiff Nicole Davison Spacey ("Spacey") appeals the trial court's entry of judgment for the Appellee–Defendant State Farm Fire and Casualty Company ("State Farm") on Spacey's action for declaratory relief. Spacey appeals and argues that the trial court's finding that State Farm complied with the cancellation provision such that the June 27, 2002 cancellation was effective is clearly erroneous.

We affirm.

### Facts and Procedural History

Facts pertinent to this appeal are found in our court's resolution of Spacey's first appeal, which reads as follows:

The relevant facts are undisputed. At all times pertinent to this action, Fred Huckstep ("Huckstep") and Jason Johnson ("Johnson") owned lakefront property at Lake Holiday. On July 4, 2002, [Spacey] was a guest on Johnson's property. At some point, Johnson, [Spacey], and other guests enjoyed a boat ride on Lake Holiday. Johnson drove the boat to a cove and anchored. At the same time, Huckstep's children—who were playing on Huckstep's property—"began launching water balloons into the lake from a high powered slingshot attached to trees on the Huckstep property." Appellant's Brief at 3. Johnson and another boater teased the children regarding their inability to hit the boat with the balloons. In response, Lee Huckstep ("Lee"), the adult son of Huckstep, launched a water balloon at the boat, which struck [Spacey] in the right eye.

As a result of the incident, [Spacey]'s eye socket was shattered and she sustained a head injury and a concussion. [Spacey] also suffered a myriad of other injuries to her eye, including muscle, nerve, and soft tissue damage, light sensitivity from a non-responsive pupil that no longer dilates, and discomfort. In addition, and as a consequence of her injuries, [Spacey] required surgery to her eye, including the permanent placement of a medical device into her eye socket.

### II. Lee's Insurance Policy

Following the incident in question, Lee notified State Farm, from whom he had purchased a homeowner's insurance policy ("Policy"), of [Spacey]'s injuries. In relevant part, the Policy—which was in effect from December 6, 2001 to December 6, 2002 and covered Lee's home,

not apartment, at 3995 Grandview Drive in Crawfordsville, Indiana—contains the following cancellation provision:

### SECTION I AND SECTION II—CONDITIONS

\* \* \*

5. *Cancellation*

\* \* \*

b. We [1] may cancel this [P]olicy only for the reasons stated in this condition. We will notify you [2] in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the *Declarations*. Proof of mailing shall be sufficient proof of notice:

(1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

\* \* \*

c. When this [P]olicy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded.... When we cancel, the return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when the [P]olicy is returned to us. In such cases, we will refund it within a reasonable

---

1. The term "we," as used in the Policy, refers to State Farm.

2. As defined in the Policy, the term "you" refers, in relevant part, to Lee.

time after the date cancellation takes effect.

The Policy Declarations describe Lee's mailing address as: "3995 Grandview Dr[.,] Crawfordsville IN 47933–9382."

After receiving notice of the incident, State Farm, through its agent Keith Parker ("Parker"), informed Lee that the Policy had lapsed for premium non-payment.[3] At his deposition, Lee testified that he had not received a bill from State Farm for the premium, which was due on June 6, 2002. On June 12, 2002, State Farm's Print, Insert and Mail Center sent a "run of cancellation notices," which included a notice to Lee at "3995 Grandview Dr Apt LH Crawfordsville IN 47933–9382." The cancellation notice was not designated into evidence; however, a printout from Parker's office regarding the cancellation notice contains the following pertinent information: "Semiannual Account[,] June 12, 2002[,] $268.00[,] Jun 27, 2002 ... First non-pay."

In addition to this notice, on June 14, 2002, one of Parker's employees left a message on Lee's answering machine, reminding him that the premium on the Policy was late and that he needed to submit payment to avoid cancellation. Thereafter and because no payment was received, State Farm cancelled the Policy on June 27, 2002. On July 3, 2002, Parker sent Lee a "Notice of Account Closing," which provides as follows:

> We have not received the payments required to keep this [P]olicy in force. In accordance with the cancellation provisions, your policy identified in this notice is hereby canceled effective 12:01 A.M. standard time on the cancellation date specified [i.e., June 27,

2002] due to nonpayment of the premium. [ ... There is no coverage between the date and time of cancellation and the date and time of reinstatement.]

On July 12, 2002, i.e., eight days following the incident with [Spacey] and approximately fifteen days after the Policy had been cancelled, Lee paid, and State Farm accepted, the premium payment for June 6, 2002 to December 6, 2002.

* * *

On September 3, 2002, Lee informed State Farm that [Spacey] would be filing an injury claim against him and, further, requested liability coverage under the Policy. The following day, State Farm advised Lee that it would not provide him liability coverage because the Policy was not in force on July 4, 2002.

### III. Commencement of the Present Litigation

On June 9, 2003, Spacey [formerly Nicole Davison] filed a complaint against several defendants including State Farm, seeking a declaratory judgment that coverage existed under the Policy such that State Farm is obligated to indemnify Lee for any judgment rendered against him. On January 18, 2005, [Spacey] filed a motion for summary judgment, seeking a declaration that Lee is entitled to a defense and indemnification. On or about March 23, 2005, State Farm filed its response to [Spacey's] motion for summary judgment. To support this response, State Farm designated an amended interrogatory answer identifying the documents

---

**3.** Lee's prior homeowner's policy with State Farm had lapsed for premium non-payment. On December 6, 2001, more than thirty days after the lapse, Lee applied for and received the Policy at issue.

upon which it relied in denying coverage. On May 13, 2005, the trial court granted summary judgment in favor of State Farm.

*Davison v. State Farm Fire & Casualty Co.*, No. 49A02–0506–CV–487, slip op. at 2–7, 838 N.E.2d 562 (Ind Ct.App. Nov. 8, 2005) (record citations omitted) (footnotes omitted).

Spacey appealed and a panel of this court reversed and remanded, concluding that there existed genuine issues of material fact with regard to whether a summary judgment was appropriate. During the subsequent bench trial, Spacey argued that the cancellation notice was ineffective because it could not have been received by Lee more than ten days before the cancellation date. The trial court entered judgment in favor of State Farm along with its Findings of Fact and Conclusions of Law. It is from this judgment that Spacey now appeals.

## Standard of Review

■ The standard for reviewing a trial court's findings of fact and conclusions of law is a two-tiered process:

When the trial court has entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52, we apply the following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment. The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We neither reweigh the evidence [n]or assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. We review conclusions of law de novo.

*Tompa v. Tompa*, 867 N.E.2d 158 (Ind.Ct. App.2007) (citations omitted).

## Discussion and Decision

■ The issue before us is whether State Farm complied with the cancellation process as set forth in Indiana Code section 27–7–12–3 and the Huckstep insurance policy such that the June 27, 2002 cancellation notice was effective. The parties concede that notice of policy cancellation was received but disagree whether the notice was received more than ten days before the policy's cancellation date.

The relevant portion of Indiana Code section 27–7–12–3 is as follows:

(a) Notice of cancellation of property insurance coverage by an insurer must:

(1) be in writing;

(2) be delivered or mailed to the named insured at the last known address of the named insured;

(3) state the effective date of the cancellation; and

(4) upon request of the named insured, be accompanied by a written explanation of the specific reasons for the cancellation.

(b) An insurer shall provide written notice of cancellation to the named insured at least:

(1) ten (10) days before canceling a policy, if the cancellation is for nonpayment of a premium;

\* \* \*

(c) If the policy was procured by an independent insurance producer licensed in Indiana, the insurer shall deliver or mail notice of cancellation to the insurance producer not less than ten (10) days before the insurer delivers or mails the notice to the

named insured, unless the obligation to notify the insurance producer is waived in writing by the insurance producer.

State Farm contends that the term "days" as used in the statute refers to calendar days. Spacey disagrees and argues the term "days" must mean business days. The statute provides no definition for this term nor does the insurance policy. The trial court determined that it was more likely than not that the Hucksteps received the cancellation notice more than ten days before the June 27, 2002 cancellation date but did not address the issue of whether "days" means calendar or business days.

■ To determine the meaning of "days" within the statute, we use several rules of statutory construction.

[W]hen a statute is unambiguous, a court must apply the plain and obvious meaning and not resort to other rules of construction. If the legislature has not defined a word, it is afforded its plain and ordinary meaning. Courts may properly consult English dictionaries to determine the plain and ordinary meaning of words. 'Day' may be defined as either 'the mean solar day of 24 hours beginning at mean midnight' or 'the time established by usage or law for work, school, or business.' Because there is no single and uniform meaning of "day," the statute requires interpretation. The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result.

*Naugle v. Beech Grove City Schs.,* 864 N.E.2d 1058, 1068 (Ind.2007) (citations omitted).

In *Naugle,* the court addressed the issue of whether the Wage Payment Statute requires payment within ten *calendar* days or ten *business* days of the date wages were earned. The *Naugle* court determined that, within the context of the Wage Payment Statute, the term "days" should be construed as meaning business days because that statute "deals with employment relations that frequently arise in activities that are scheduled and not continuous." *Id.* at 1068. The court was concerned with problems that may arise from payroll preparation due to holidays and weekends when most employees do not work. *Id.*

Unlike the Wage Payment Statute in *Naugle,* this case involves an activity that can and often does occur without regard to the workweek. Indiana Code section 27–7–12–3 applies to homeowner's insurance which, when payment is current, is continuous until the end of the term or when cancelled according to an enumerated term. We agree with State Farm's observation that insurance is a "24/7 environment where much insurance is sold over the phone or internet." Br. of Appellee at 5. Insured individuals would not want to be covered only on business days but during all calendar days, nor would they accept coverage merely on weekends. Unlike *Naugle,* holidays would not interfere with use of insurance as most major insurers offer customers various opportunities to maintain contact with their insurer as well as to purchase and maintain coverage. As can be seen in advertisements on television, radio, and the internet, insurers seek to impress upon the consumer the ease with which a person can obtain insurance.[4] The realities of the insurance business allow consumers to purchase coverage in

---

**4.** A State Farm customer may pay his bill, report claim and manage his policies on the internet. *See* State Farm website, available at http://www.statefarm.com/ insurance/service_center/service_center.asp

minutes during any day of the week. Pursuant to Indiana Code section 27–7–12–3(b), a consumer is entitled to ten days notice before cancellation of a residential policy. We conclude that ten calendar days is sufficient to give a consumer notice of cancellation and to obtain other insurance if he so chooses.

Based on the trial court's finding that the notice was sent on June 12, 2002, we conclude that the trial court could reasonably infer, based on the evidence and testimony adduced at trial, that the notice arrived at Huckstep's residence more than ten calendar days before the June 27, 2002 date of cancellation. Therefore, the trial court's findings are not clearly erroneous and we affirm the trial court's judgment in favor of State Farm.

Affirmed.

NAJAM, J., and BRADFORD, J., concur.