INDIANAPOLIS CAR EXCHANGE, INC., Appellant–Defendant,

v.

Randall ALDERSON, and Christina Alderson, Appellees–Plaintiffs,

Indianapolis Car Exchange, Inc., Counterclaim Plaintiff,

v.

Randall Alderson and Christina Alderson, Counterclaim Defendants,

Indianapolis Car Exchange, Inc., Third–Party Plaintiff,

v.

Michael J. Thurman, individually and d/b/a Top Quality Auto Sales, and Michael L. Thurman, individually and d/b/a Top Quality Auto Sales, Third–Party Defendants.

No. 80A02–0902–CV–116.

Court of Appeals of Indiana.

Aug. 5, 2009.

J. Kent Minnette, Kirtley Taylor Sims Chadd & Minnette, P.C., Crawfordsville, IN, Attorney for Appellant.

Michael P. Shanahan, Stewart & Irwin, P.C., Indianapolis, IN, Attorney for Appellees.

## OPINION

BARNES, Judge.

### Case Summary

Indianapolis Car Exchange ("ICE") appeals the trial court's grant of summary judgment in favor of Randall and Christina Alderson. We affirm.

### Issue

ICE raises four issues, which we consolidate and restate as whether the trial court properly entered summary judgment on the issue of title in favor of the Aldersons and ordered the BMV to release a lien held by ICE.

### Facts

Mike Thurman operated Top Quality Auto Sales ("Top Quality"), a used car dealership. Top Quality financed the majority of its inventory through a financing agreement with ICE, an auto auction house. Pursuant to ICE's agreement with Thurman, ICE filed a financing statement

with the Indiana Secretary of State. Although Top Quality had cash flow problems and ICE's insurance company would not cover transactions between ICE and Top Quality, ICE continued its financing arrangement with Top Quality. On March 9, 2007, Top Quality purchased a 2004 Ford truck using its financing arrangement with ICE.

On March 21, 2007, immediately following an auction at another auction house, Thurman sold the truck to Lightly Used Trucks ("Lightly"), another used car dealership operated by Bonnie Chrisman. Chrisman had arranged with Randall to purchase the truck for him. At some point, Chrisman mentioned to Randall that Thurman told her "he was running on Danny Hockett money[,]" implying that Thurman "operate[s] financially somehow through Danny Hockett." App. pp. 89, 124. Danny Hockett is the proprietor of ICE. Chrisman wrote a check to Thurman for the truck that day. Thurman did not inform ICE of the sale or repay ICE for the truck.

On March 23, 2007, the Aldersons paid Chrisman for the truck. Chrisman tried to retrieve the title for the Aldersons and discovered that Thurman had not paid ICE for the truck. On March 28, 2007, ICE requested that the BMV place a lien in its favor on the title of the truck. ICE refused to release the lien on the truck, and the Aldersons refused to return the truck to ICE.

On October 25, 2007, the Aldersons filed a complaint against ICE.[1] On December 19, 2007, ICE filed its answer, affirmative defense, counterclaim, and third-party complaint against Thurman and Top Quality. ICE claimed that Thurman breached his contract with ICE, that Thurman and the Aldersons committed conversion and theft, that Thurman committed fraud, and that it was entitled to replevin. On January 1, 2008, Thurman answered the third-party complaint. On February 4, 2008, the Aldersons answered the counterclaim.

On March 28, 2008, the Aldersons filed a motion for summary judgment on the issue of title. On October 20, 2008, ICE filed a partial motion for summary judgment regarding its replevin action against the Aldersons and responded to the Aldersons' motion for summary judgment. Both parties filed reply briefs regarding their respective motions for summary judgment. On December 30, 2008, after a hearing, the trial court granted the Aldersons' motion for summary judgment as to the issue of title and denied ICE's motion for partial summary judgment. ICE now appeals.

## Analysis

ICE argues that the trial court improperly granted summary judgment for the Aldersons on the issue of title. When reviewing the grant or denial of summary judgment, we use the same standard of review as the trial court. *Naugle v. Beech Grove City Schs.*, 864 N.E.2d 1058, 1062 (Ind.2007). "Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing Ind. Trial Rule 56(C)). "All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party." *Id.* Our review is limited to those materials designated in the trial court under Indiana Trial Rule 56(C). *Id.* We will affirm summary judgment if it may be sustained on any theory or basis found in the record. *Yates v. Johnson County Bd.*

---

1. ICE did not include a copy of the complaint in the Appendix, but it is clear that the parties dispute the issue of title.

*of Comm'rs,* 888 N.E.2d 842, 847 (Ind.Ct. App.2008).

■ We begin our analysis with Indiana Code Section 26–1–9.1–320(a), which provides in part: "Except as otherwise provided in this subsection and subsection (e), a buyer in ordinary course of business takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence." [2] Indiana Code Section 26–1–1–201(9) defines "buyer in ordinary course of business" as:

> a person that buys goods in good faith without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind. A person buys goods in the ordinary course of business if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices....

■ To the extent ICE argues that there are genuine issues of material fact regarding whether Chrisman and the Aldersons were buyers in the ordinary course of business because they knew of ICE's interest in the truck, this argument misses the mark. Comment 3 to Indiana Section 26–1–9.1–320 explains:

> Subsection (a) provides that such a buyer takes free of a security interest, even though perfected, and even though the buyer knows the security interest exists. Reading the definition together with the rule of law results in the buyer's taking free if the buyer merely knows that a security interest covers the goods but taking subject if the buyer knows, in

addition, that the sale violates a term in an agreement with the secured party. Thus, for a buyer to take free of a security interest created by the seller, the buyer may have knowledge that the security interest exists but may not have knowledge that the sale violates the rights of another person.

In arguing there is a genuine issue of material fact as to whether Chrisman and the Aldersons knew that the sale violated ICE's rights, ICE points out that at some point Chrisman told Randall that Thurman "was running on Danny Hockett money[.]" App. p. 89. ICE also relies on the fact that the sale took place at another auction house after the conclusion of the auction. This evidence does not establish a genuine issue of material fact for trial.

In her second affidavit, Chrisman stated, "Lightly had no knowledge of the details of Top Quality's financial arrangements but understood Indianapolis Car Exchange Inc. ('ICE'), financially backed Top Quality in some fashion." App. p. 72. We cannot conclude that knowledge of a financial relationship between Thurman and ICE can be equated with knowledge of the existence of ICE's security interest in the truck, let alone with knowledge that the sale of the truck from Thurman to Chrisman violated ICE's rights. This is the case even when we consider that the sale took place at another auction after the auction ended because, by all accounts, it was Thurman's subsequent failure to pay ICE, not the sale of the truck, that violated ICE's rights. In the absence of designated evidence showing that Chrisman or the Aldersons had knowledge that the sale of the truck violated ICE's rights, Chrisman and the Aldersons were buyers in the ordinary course of business. *See Madrid*

---

**2.** Because of our disposition today, it is unnecessary to determine whether ICE's lien was perfected. We assume for the sake of argument that it was.

*v. Bloomington Auto Co.,* 782 N.E.2d 386, 397 (Ind.Ct.App.2003) (holding that where no evidence was designated to show that a car buyer knew that a sale violated the rights of the dealership that owned the car, the buyers were buyers in the ordinary course of business for purposes of Ind.Code § 26–1–1–201(9)).

ICE also argues that Indiana Code Section 26–1–9.1–320(a) does not apply here because the Aldersons' seller, Chrisman, did not create the security interest at issue. ICE relies on Example 1 of Comment 3 to Indiana Code Section 26–1–9.1–320, which provides:

> Manufacturer, who is in the business of manufacturing appliances, owns manufacturing equipment subject to a perfected security interest in favor of Lender. Manufacturer sells the equipment to Dealer, who is in the business of buying and selling used equipment. Buyer buys the equipment from Dealer. Even if Buyer qualifies as a buyer in the ordinary course of business, Buyer does not take free of Lender's security interest under subsection (a), because Dealer did not create the security interest; Manufacturer did.

As the Example explains, Manufacturer is in the business of manufacturing appliances, not *selling* manufacturing equipment. The sale did not comport with the usual or customary practices in the kind of business in which Manufacturer was engaged or with Manufacturer's own usual or customary practices. *See* I.C. § 26–1–1–201(9) (defining buyer in the ordinary course). Thus, in Example 1, Dealer did not buy the goods in the ordinary course of business. Based on a close reading of Example 1, we conclude this limitation applies only in situations where the original buyer was not buying goods in the ordinary course of business.

In the case before us, however, Chrisman was a buyer in the ordinary course of business because Thurman was in the business of selling used cars. When the Aldersons bought the truck from Chrisman, a used car dealer, they too were buyers in the ordinary course of business. "A purchaser of goods acquires all title which the purchaser's transferor had or had power to transfer, except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased." (I.C. § 26–1–2–403(1)). Thus, Chrisman took free of ICE's security interest in the truck and had the power to transfer title to the Aldersons free of that security interest. *See id.*

This application of Indiana Code Sections 26–1–9.1–320(a) and 26–1–2–403(1) is consistent with the conclusion in *Gary Aircraft Corp. v. General Dynamics Corp.,* 681 F.2d 365 (5th Cir.1982) *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1366, which clarified the holding in *National Shawmut Bank v. Jones,* 108 N.H. 386, 236 A.2d 484, 486 (1967).

> In *National Shawmut Bank* an individual sold a car, subject to a security interest, to a dealer, who then sold it to a buyer in the ordinary course of business.[3] Since the security interest was not created by his seller, the last buyer in the chain could not take free and clear of the interest under section 9–307 [4] of the UCC. Section 2.403(a) provides that

3. Like Example 1, the used car dealer in *National Shawmut Bank* was not a buyer in the ordinary course of business because the individual from whom the dealer bought the car was not "in the business of selling" used cars. I.C. § 26–1–1 –201(9).

4. Indiana Code Section 26–1–9.1–320 was formerly codified as Indiana Code Section 26–1–9–307 and was referred to as 9–307 of the UCC.

a purchaser of goods acquires all title that his transferor had or had power to transfer, and that a seller with voidable title can transfer good title. If, under that provision, a retailer who bought subject to a security interest was one with voidable title and had the power to transfer good title, the "created by his seller" limitation of section 9.307(a) would be without any effect, so the *National Shawmut Bank* court held that section 2.403(a) does not provide an escape to section 9.307(a). That rule has been approved by the commentators ... and we do not question it. But the rule is that section 2.403(a) is not available to save one who buys when the seller's title is subject to a security interest but who does not qualify under section 9.307(a). It certainly does not mean that section 2.403(a) is not available to subsequent transferees from a successful section 9.307(a) buyer, as General Dynamics urges. *See* Skilton, Buyer in the Ordinary Course of Business under Article 9 of the Uniform Commercial Code, 1974 Wis.L.Rev. 1, 76 (viewing the point as "obvious"). If General Dynamics were correct, section 9.307(a) would be of scant benefit to the "protected" buyer in the ordinary course, for good title means little if one cannot transfer it. We hold that the lien of General Dynamics was extinguished upon the sale by Ayer to Stewart under section 9.307(a), and the subsequent sale to Gary could not resurrect it.

*Gary*, 681 F.2d at 376–77. Based on *Gary*, we reject ICE's contention that *National Shawmut Bank* prevents the Aldersons from taking title free of ICE's security interest. Similarly, to the extent that *Leasing One Corp. v. Caterpillar Financial Services Corp.*, 776 N.E.2d 408, 412 (Ind.Ct.App.2002), stands for the proposition that a buyer in the ordinary course of business takes free of a security interest only when that security interest was created by his or her seller, we disagree with such a narrow reading of Indiana Code Sections 26–1–9.1–320(a) and 26–1–2–403(1). Thus, ICE has not established that the Aldersons were not entitled to summary judgment as a matter of law on this point.

■ ICE also argues that Example 2 of Comment 3 to Indiana Code Section 26–1–9.1–320 supports its position because it did not acquiesce to the sale of the truck. We disagree. Example 2 provides:

> Manufacturer, who is in the business of manufacturing appliances, owns manufacturing equipment subject to a perfected security interest in favor of Lender. Manufacturer sells the equipment to Dealer, who is in the business of buying and selling used equipment. Lender learns of the sale but does nothing to assert its security interest. Buyer buys the equipment from Dealer. Inasmuch as Lender's acquiescence constitutes an "entrusting" of the goods to Dealer within the meaning of Section 2–403(3) Buyer takes free of Lender's security interest under Section 2–403(2) if Buyer qualifies as a buyer in ordinary course of business.

I.C. § 26–1–9.1–320 cmt. 3.

Indiana Code Section 26–1–2–403(2) provides:

> Any entrusting of possession of goods to a merchant who deals in goods of that kind gives the merchant power to transfer all rights of the entruster to a buyer in ordinary course of business.

Indiana Code Section 26–1–2–403(3) further provides:

> "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of

whether the procurement of the entrust-ing or the possessor's disposition of the goods have been such as to be theft under the criminal law.

Regarding whether ICE entrusted the truck to Thurman, ICE focuses on wheth-er it acquiesced to the sale of the truck from Thurman to Chrisman and explains that it requested the BMV to acknowledge the lien after it "learned Thurman made the sale and defaulted on his obligations." Appellant's Reply Br. p. 6. Although ICE did object after the sale, it did so because Thurman defaulted, not because he sold the truck. Example 2 is not directly on point. ICE entrusted the truck to Thur-man by delivering the truck to him and acquiescing in his retention of possession of the truck with the expectation that Thurman would sell the truck to someone else. This is the very circumstance in which Indiana Code Section 26–1–2–403(2) was intended to apply.

For example, Comment 2 to Indiana Code Section 26–1–2–403 provides in part:

The many particular situations in which a buyer in ordinary course of business from a dealer has been protected against reservation of property or other hidden interest are gathered by subsections (2)-(4) into a single principle protecting per-sons who buy in ordinary course out of inventory. *Consignors have no reason to complain, nor have lenders who hold a security interest in the inventory, since the very purpose of goods in in-ventory is to be turned into cash by sale.*

(Emphasis added). Further, Comment 2 to Indiana Code Section 26–1–9.1–315 pro-vides in part:

Likewise, the general rule that a securi-ty interest survives disposition does not apply if the secured party entrusts goods collateral to a merchant who deals in goods of that kind and the merchant sells the collateral to a buyer in ordinary

course of business. *Section 2–403(2) gives the merchant the power to transfer all the secured party's rights to the buy-er, even if the sale is wrongful as against the secured party.* Thus, under subsection (a)(1), an entrusting secured party runs the same risk as any other entruster.

(Emphasis added).

■ Moreover, as we have explained, Indiana Code Section 26–1–2–403:

was intended to determine the priorities between the two innocent parties: (1) the original owner who parts with his goods through fraudulent conduct of an-other and (2) an innocent third party who gives value for the goods to the perpetrator of the fraud without knowl-edge of the fraud. By favoring the inno-cent third party, the Uniform Commer-cial Code endeavors to promote the flow of commerce by placing the burden of ascertaining and preventing fraudulent transactions on the one in the best posi-tion to prevent them, the original seller.

*Madrid,* 782 N.E.2d at 397 (quotations and citations omitted). In a dispute between two innocent parties, the policy behind the Uniform Commercial Code ("UCC") is to favor the party who was not in the best position to prevent the fraudulent transac-tion. *Id.*

The designated evidence here shows that ICE entered into its financing ar-rangement with Top Quality even though Thurman was "blacklisted" by ICE's insur-ance company and the insurance company would not cover ICE for transactions in which Thurman represented Top Quality. App p. 44. Further, ICE was aware of Top Quality's financial problems and al-lowed it to fall behind on its obligations, ICE agreed to hold checks from Top Qual-ity for a certain period of time, and ICE verbally agreed to continue the relation-ship with Top Quality under slightly differ-ent terms. ICE points to no designated

evidence showing that Chrisman or the Aldersons knew of Top Quality's financial problems. In fact, in her second affidavit, Chrisman specifically stated, "Lightly did not learn of the trouble between Top Quality and ICE until after it purchased the Truck from Top Quality." App. p. 72. Because ICE was aware of Top Quality's financial problems and could have stopped doing business with it, ICE was in a better position than Chrisman or the Aldersons to prevent the fraud.[5]

ICE also claims that neither Chrisman nor the Aldersons were buyers in the ordinary course of business as required by Indiana Code Section 26–1–2–403(2). As we have already discussed, the designated evidence does not establish a genuine issue of material fact on the issue of whether Chrisman or the Aldersons had knowledge that the sale of the truck violated ICE's rights. This argument fails.

In sum, whether Indiana Code Sections 26–1–9.1–320(a) or 26–1–2–403(2) are read separately or in conjunction with one another, the Aldersons should be permitted to take title free of ICE's security interest in the truck. The trial court properly granted the Aldersons' motion for summary judgment on the issue of title.

## Conclusion

Because there are no genuine issues of material fact and the Aldersons are entitled to summary judgment on the issue of title as a matter of law, we affirm the trial court's grant of summary judgment in favor of the Aldersons. We affirm.

Affirmed.

BAKER, C.J., and MAY, J., concur.

---

**5.** Our use of the word fraud is not based on a legal definition and should not be considered a legal determination that Thurman committed fraud.