Tonya M. MITCHELL, Appellant,

v.

UNIVERSAL SOLUTIONS OF NORTH
CAROLINA, INC., Appellee.

and

Louisa Hamilton, Appellant,

v.

Ricker Oil Company, Inc., Appellee.

No. 29A02–0411–CV–931.

Court of Appeals of Indiana.

Feb. 28, 2006.

Publication Ordered Aug. 21, 2006.

Transfer Denied Nov. 8, 2006.

Ronald E. Weldy, Abrams & Weldy, PA, Indianapolis, for Appellants.

Edward E. Hollis, Baker & Daniels, LLP, Indianapolis, for Appellees.

### OPINION

MAY, Judge.

Tonya Mitchell and Louisa Hamilton ("Appellants") bring this consolidated appeal[1] of the summary judgment in favor of their former employers, Universal Solutions of North Carolina, Inc., and Ricker Oil Company, Inc., respectively. Appellants raise five issues, which we consolidate and restate as whether the trial

courts erred in granting summary judgment. We affirm.

### FACTS AND PROCEDURAL HISTORY

1. *Mitchell v. Universal Solutions*

When Universal Solutions hired Mitchell, she was provided a copy of Universal Solutions' employee handbook, which included the following information regarding vacation, sick and personal days:

### I. POLICY STATEMENT

Vacation/Sick/Personal (VSP) is designed to reward employees for their hard work and extra effort during the year. It is a chance for the employee to rest and enjoy personal pursuits so they [sic] can return to work and be a productive employee.

Each full-time employee is eligible for paid VSP the 91st day of employment following completion of the 90 day introductory period. A full-time employee who is not actively employed on January 1 of any given year is entitled to VSP in that year after having worked 90 days. This VSP will be prorated based on the employee's hire date. Once an employee has passed the 90 day introductory period, January 1 becomes the employee's anniversary date in subsequent years, for the purposes of computing VSP time. **Vacation/Sick/Personal time does not count towards overtime.** (Due to software capabilities, it will take several checks for check stubs to indicate the correct VSP time available, once you are eligible.)

A full time employee who is actively employed on January 1 of any given year, and has completed the 90 day introductory period, is entitled to VSP

---

1. Mitchell's cause was brought in Hamilton Superior Court, while Hamilton's was in Madison Superior Court. Each court granted summary judgment to the employer. Because they raised the same question of law, the appeals were consolidated.

time during the calendar year according to the schedule below.

| Years of service | VSP time |
| --- | --- |
| 1 | 120.00 Hours |
| 2 | 128.00 Hours |
| 3 | 136.00 Hours |
| 4 | 144.00 Hours |
| 5 | 160.00 Hours |
| 6 | 168.00 Hours |
| 7 | 176.00 Hours |
| 8 | 184.00 Hours |
| 9 | 192.00 Hours |
| 10+ | 200.00 Hours |

A maximum of five (5) days of VSP may be carried over to the next year. Any unused VSP days in excess of five will be forfeited. This means employees should try to use all VSP by December 31 of each year[.]

VSP days may be taken before earned within a calendar year, but if termination occurs during the year, any days used, but not earned, will be deducted from the final paycheck.

Although VSP hours will be given on January 1, for the purposes of termination calculation, VSP will be earned on a pro rata basis each pay period based on the anniversary date.

Any accrued VSP hours will be paid upon termination only if the employee gives and works at least a 2 week notice. VSP hours will not be paid upon termination if the termination is involuntary or no notice is given, to the extent determined by law. VSP may not be used in lieu of notice unless time was previously pre-approved.

VSP shall be taken at a time mutually convenient to the Company and the employee. The Company reserves the right to deny vacation requests if they cause a significant conflict in scheduling. Employees may donate up to five (5) unused earned VSP days to other employees who face family illnesses or personal illness that meet the requirements under the Family Leave Act. The dona-

tions can be either open or anonymous, but must be in writing, and signed off by the managers of the donating employee and the receiving employee. Once the request is submitted to Human Resources, it will be reviewed and considered for approval. Should the donation be approved, the donated time will be recorded as used by the donating employee.

(Appellants' App. at 72–73.) Universal Solutions acknowledges the published employee policies in its handbook do not constitute a contract.

Universal Solutions terminated Mitchell on September 16, 2003. When she was terminated, Mitchell had accrued 22.0 unused vacation hours. Universal Solutions admits Mitchell had accrued those vacation hours, but it would not pay her for them.

Mitchell sued Universal Solutions in Hamilton Superior Court. She asserted a right to money for the unpaid vacation hours, treble damages, and attorney's fees under Indiana's Wage Claim Statutes, Ind. Code ch. 22–2–9.

On March 26, 2004, Universal Solutions filed a motion for summary judgment. Mitchell filed a motion in opposition to Universal Solutions' motion and filed a cross-motion for summary judgment. After Universal Solutions filed a reply brief, the court held oral argument. The court denied Mitchell's motion for summary judgment, but granted summary judgment to Universal Solutions in an order that did not include any findings. Mitchell filed a motion to correct error, which was implicitly denied when the trial court failed to rule. *See* Ind. Trial Rule 53.3.

### 2. *Hamilton v. Ricker Oil*

When Ricker Oil hired Hamilton, she received a copy of its employee handbook,

which provided the following information regarding vacation benefits:

### 303   Vacation Benefits

Effective Date: 11/10/1998

Vacation time off with pay is available to eligible employees to provide opportunities for rest, relaxation, and personal pursuits. Employees in the following employment classification(s) are eligible to earn and use vacation time as described in this policy:

* Regular full-time employees
* Regular part-time employees

The amount of paid vacation time employees receive each year increases with the length of their employment as shown in the following schedule:

* After 1 year of eligible service the employee is entitled to 5 vacation days each year.
* After 5 years of eligible service the employee is entitled to 10 vacation days each year.
* After 10 years of eligible service the employee is entitled to 15 vacation days each year.

Vacation pay will be determined by averaging the weekly hours worked in the previous year. The length of eligible service is calculated on the basis of a "benefit year." This is the 12–month period that begins when the employee starts to earn vacation time. An employee's benefit year may be extended for any significant leave of absence except military leave of absence. Military leave has no effect on this calculation. (See individual leave of absence policies for more information.)

Once employees enter an eligible employment classification, they begin to earn paid vacation time according to the schedule. Earned vacation time is available for use in the year following its accrual.

Paid vacation time can be used in minimum increments of one day. To take vacation, employees should request advance approval from their supervisors. Requests will be reviewed based on a number of factors, including business needs and staffing requirements.

Vacation time off is paid at the employee's base pay rate at the time of vacation. It does not include overtime or any special forms of compensation such as incentives, commissions or bonuses.

As stated above, employees are encouraged to use available paid vacation time for rest, relaxation, and personal pursuits. In the event that available vacation is not used by the end of the benefit year, employees will forfeit the unused time.

Vacation does not accrue pro-rata and employees are not paid for unused vacation time upon termination of employment.

(*Id.* at 150–51.)

Because she was hired to be a manager, Hamilton also received information on the "Bonus Program" for managers:

Managers are eligible for bonus money upon termination of employment provided the employment relationship is terminated on good standing and a 2–week notice is given. The bonus is calculated on a monthly basis and is paid out quarterly. If a manager has questions about the bonus calculation, contact a supervisor or the District Manager.

(*Id.* at 152.)   A manager's bonus was calculated based on seven different categories, some of which were: reports of mystery shoppers, store inspections, cigarette audits, paperwork accuracy, and lottery ticket sales. (*Id.*) The "Standard Operating Procedures" for Store Managers also informed Hamilton: "Managers are eligible for bonus money upon termination of

employment provided the employee leaves in good standing and a 2–week notice is given." (*Id.* at 170.)

Ricker Oil terminated Hamilton on July 7, 2003. At the time she was terminated, she had accrued, but not used, ten vacation days. In addition, she had accrued $503 under the Bonus Program for the months of April, May, and June 2003, but she had not been paid those bonuses because the quarterly payment came in July. Ricker Oil did not pay Hamilton for her vacation days or her bonuses.

Hamilton filed suit in Madison Superior Court asserting a right to payment for her unused vacation days, payment for her earned bonuses, treble damages, and attorney fees under the Wage Claims Statute. Hamilton and Ricker Oil both moved for summary judgment. The court denied Hamilton's motion, but granted summary judgment for Ricker Oil.

## DISCUSSION AND DECISION

■ "The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law." *Branham v. Celadon Trucking Serv., Inc.,* 744 N.E.2d 514, 521 (Ind.Ct. App.2001), *trans. denied* 753 N.E.2d 16 (Ind.2001); *see also* Ind. Trial Rule 56(C). A factual issue is material if it bears on the ultimate resolution of a relevant issue. *Bushong v. Williamson,* 790 N.E.2d 467, 474 (Ind.2003). "A factual issue is genuine if it is not capable of being conclusively foreclosed by reference to undisputed facts." *Id.*

We review the trial court's grant of summary judgment applying the same standard the trial court applied. *Ind. Heart Assoc., P.C. v. Bahamonde,* 714 N.E.2d 309, 311 (Ind.Ct.App.1999), *trans. denied* 735 N.E.2d 220 (Ind.2000). We must resolve any doubts about facts, or the inferences therefrom, in the light most favorable to the nonmoving party. *Id.* However, we may affirm the summary judgment on any theory supported by the evidence designated to the trial court. *Branham,* 744 N.E.2d at 521. Once the movant sets forth evidence to demonstrate no factual issues exist, the burden shifts to the nonmoving party to produce evidence demonstrating an issue of fact. *Id.* The nonmoving party may not simply rest on the pleadings; he must designate facts to the trial court. *Id.*

■ The appellant has the burden to prove the trial court erred when it determined there were no issues of material fact and the appellee was entitled to judgment as a matter of law. *Ind. Heart Assoc.,* 714 N.E.2d at 311. If the trial court entered findings of fact in its summary judgment order, those findings do not control us. *City of Gary v. Ind. Bell Tel. Co.,* 732 N.E.2d 149, 153 (Ind.2000), *reh'g denied.* Rather, we may use those findings to aid our interpretation of the trial court's decision. *Id.* Although the non-movant bears the burden of demonstrating summary judgment was erroneous, we carefully review the trial court's decision to ensure that the non-movant was not wrongly denied her day in court. *Kennedy v. Guess, Inc.,* 806 N.E.2d 776, 779 (Ind.2004), *reh'g denied.*

In this case, the parties acknowledge there are no genuine issues of material fact: both employers had published handbooks that contained policies regarding the payment of vacation time upon termination of employment; both employers admitted their handbooks did not constitute a contract; both employees were involuntarily terminated from their employment; both employees had accrued vacation time prior to termination; and both employers refused to pay the employees for the unused vacation time. The only question then is

whether, as a matter of law, the non-contractual published policies in the employee handbooks relieved the employers of any obligation to pay the employees for the accrued, but unused, vacation time.

◼ As we explained in *Indiana Heart Associates:*

> Indiana Code § 22–2–5–1, sometimes referred to as the Wage Payment Statute, contains three distinct regulations: "(1) employee's wages must be paid in money; (2) if requested, employers must pay employees semi-monthly or bi-weekly; and (3) employees, upon separation from employment, must be paid the amount due them at their next and usual payday (unless their whereabouts are unknown)." Although the Wage Payment Statute does not define "wages," we have held that vacation pay constitutes deferred compensation in lieu of wages and is thus subject to the provisions of the statute. Nonetheless, an employee's right to vacation pay under the statute is not absolute. Rather, an employee is entitled to her accrued vacation pay to the time of termination "provided no agreement or published policy exist[s] to the contrary . . . ." Citing *Die & Mold, Inc.* [*v. Western*, 448 N.E.2d 44 (Ind.Ct.App.1983) ], this court recently held:
>
> > Vacation pay is additional wages, earned weekly, where only the time of payment is deferred. It necessarily follows that, absent an agreement to the contrary, the employee would be entitled to the accrued vacation pay at the time of termination.
>
> The undisputed evidence in this case shows that Heart Associates had in place a published policy declaring that an employee would not be entitled to her accrued vacation if she were terminated for, among other things, "gross misconduct." It was for "gross misconduct"

and "inappropriate behavior" that Bahamonde was terminated. The record shows that Bahamonde received a copy of the employee handbook in which the policy was contained. And she acknowledged that it was her responsibility to know and understand the contents of the handbook. Because of Heart Associates' published policy, Bahamonde did not have an automatic statutory right to her accrued but unpaid vacation pay. The trial court thus erred in granting summary judgment in Bahamonde's favor.

*Ind. Heart Assoc.*, 714 N.E.2d at 311–12 (internal citations omitted).

Similarly, in *Damon Corp v. Estes*, we held an employee was not entitled to money for accrued vacation time because he had signed an acknowledgment that he had read and would abide by the company policies, which included a limitation on an employee's right to vacation pay until after "his/her anniversary date" each year. 750 N.E.2d 891, 893 (Ind.Ct.App.2001).

Application of the law set out in *Indiana Heart* and *Damon Corp.* to the facts in this case could not be more straight-forward: pursuant to the employers' published policies, which Mitchell and Hamilton acknowledged they would follow, neither is entitled to payment for unused vacation days she had accrued prior to her involuntary termination. *See id; Ind. Heart*, 714 N.E.2d at 312.

Nevertheless, Mitchell and Hamilton claim *Damon Corp.* and *Indiana Heart* are not controlling:

> In both of these decisions, the Court of Appeals enforced the employment policies contained in the handbooks of defendant employers without examining the relevant employment contracts. Employers' reliance upon these cases is misplaced. Under no circumstances can

these opinions stand for the proposition than an employment policy does not need to be contractual to be enforceable. Neither the *Indiana Heart* nor *Damon Corp.* decisions can possibly stand for this proposition since the term "contract" is never used in either opinion.... Additionally, neither opinion bothers to discuss or address *Orr* [*v. Westminster Village North, Inc.*, 689 N.E.2d 712 (Ind.1997)] nor how the handbooks in question are enforceable.... It is for precisely these reasons that *Indiana Heart* and *Damon Corp.* are at the least distinguishable, if not ripe for overruling. To the extent that counsel for the plaintiff employees in these cases neglected these pertinent issues, their error does not eviscerate the relevance of these queries to these cases, nor bolster Employers' argument that their employment policies need not be part of the employment contract between the parties.

(Appellants' Br. at 18) (citations omitted).

◼ We need not analyze whether, how, or to what extent the policies in an employment handbook are enforceable against or by an at-will employee, for one very simple reason: "In this state, a party may not accept benefits under a transaction or instrument and at the same time repudiate its obligations." *In Re Estate of Palamara*, 513 N.E.2d 1223, 1228 (Ind.Ct. App.1987), *reh'g denied.* As the employers note, Hamilton and Mitchell accrued vacation days pursuant to the policies in the handbooks. If the policies are unenforcea-ble, then Hamilton and Mitchell had no legal claim to vacation days in the first place. If they had a right to earn the vacation days pursuant to the policies in the handbooks, then the employers had a right to take the days away under any circumstances clearly elucidated in the published policy. *See id.* (party could not obtain benefits of contract while repudiating the obligations). *See also Raymundo v. Hammond Clinic Ass'n*, 449 N.E.2d 276, 283 (Ind.1983) (because "Dr. Raymundo accepted the benefits of the contract for approximately two and one-half years," he cannot repudiate its obligations); *Norlund v. Faust*, 675 N.E.2d 1142, 1151 (Ind.Ct. App.1997) ("Norlund was fully aware that the contract into which he entered was in violation of the statute. He acquiesced to that violation and may not now claim that the very same violation relieves him of his obligations."), *clarified on other grounds on reh'g* 678 N.E.2d 421 (Ind.Ct.App.1997), *trans. denied* 690 N.E.2d 1180 (Ind.1997); *Caito v. Indianapolis Produce Terminal, Inc.*, 162 Ind.App. 590, 596–97, 320 N.E.2d 821, 825 (Ind.Ct.App.1974) (after acquiescing in the violation of the contract and accepting the benefits therefrom, Caito could not complain about the violation).

◼ To avoid this equitable doctrine, Mitchell and Hamilton claim they do not rely on the handbooks to create their right to the vacation days; rather, they say, their right to the vacation days arose "in accordance with their respective at-will employment contracts." (Appellants' Reply Br. at 8.)[2] As Mitchell and Hamilton

---

**2.** We would be remiss if we did not note the inappropriate tone permeating Appellants' Reply Brief. Counsel accuses employers of "pilfering the earned wages of Employees," (Appellants' Reply Br. at 2), "contrived ignorance," (*id.* at 5), "trying to remain blissfully ignorant," (*id.*), and "stealing wages." (*Id.* at 8.) He also refers to Employer's arguments as "ridiculous," (*id.* at 2), "blatantly illogical," (*id.* at 3), and "silly." (*Id.* at 8.) His brief reflects a lack of professionalism. *See Lasater v. Lasater*, 809 N.E.2d 380, 404 (Ind.Ct.App. 2004). "Righteous indignation is no substitute for a well-reasoned argument." *WorldCom Network Serv., Inc. v. Thompson*, 698 N.E.2d 1233, 1236–37 (Ind.Ct.App.1998), *trans. denied* 714 N.E.2d 166 (Ind.1999). "We remind counsel that an advocate can present his

do not point to designated evidence of an oral or written contract that could have entitled them to those benefits, we find their argument disingenuous.

The same equitable estoppel analysis prohibits Hamilton from claiming a right to money under the Bonus Program. The Program explicitly provided she would be paid the Bonus "upon termination of employment provided the employment relationship is terminated on good standing and a 2–week notice is given." (Appellant's App. at 152.) She failed to meet that requirement because she was fired and left immediately. She cannot avoid the obligation to have worked two weeks after giving notice of termination, while at the same time claiming entitlement to the benefits of the Bonus Program.

Because the Appellants' arguments fail, we affirm the grants of summary judgment to Universal Solutions and Ricker Oil.

Affirmed.

SHARPNACK, J., and VAIDIK, J., concur.

### ORDER

On February 28, 2006, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellees, by counsel, have filed a Motion for Publication of Memorandum Decision, and the Appellants, by counsel, have filed their Opposition to Motion for Publication.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellees' Motion for Publication of Memorandum Decision is GRANTED, and this Court's opinion handed down in this cause on February 28, 2006, marked

Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

All Panel Judges Concur.

cause, protect the record for subsequent review and preserve professional integrity by

patient firmness no less effectively than by belligerence or theatrics." *Id.* at 1237.