Maureen **REEL**, Thomas **Dullen** and **Ned Milby** on Behalf of Themselves and All Others Similarly Situated, Appellants—Plaintiffs,

v.

**CLARIAN HEALTH PARTNERS, INC.**, Appellee—Defendant.

No. 49A02–0703–CV–218.

Court of Appeals of Indiana.

Sept. 5, 2007.

Ronald E. Weldy, Weldy & Associates, Indianapolis, IN, Attorney for Appellant.

Kim F. Ebert, Bonnie L. Martin, Ogletree Deakins Nash Smoak & Stewart P.C., Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Maureen Reel, Thomas Dullen, and Ned Milby (collectively "Named Plaintiffs" in a class action) appeal the trial court's grant of summary judgment to Clarian Health Partners, Inc. ("Clarian"). The Named Plaintiffs raise two issues, which we consolidate and restate as whether the trial court erred by granting Clarian's motion for summary judgment. We reverse and remand.

The relevant facts follow. The Clarian Human Resources Manual ("Manual") defined "Paid Time Off" ("PTO") as "time earned as a benefit to allow employees to receive pay for days taken off work for

vacation, personal or family illness, holidays, and personal days." Appellant's Appendix at 46. The Manual stated:

\*    \*    \*    \*    \*    \*

6. Job Changes

A change in employment may alter an employee's PTO benefit. The change may affect eligibility, earning rate of accruals, or time accrued in the PTO bank ... as outlined below:

d. Termination (voluntary or involuntary) or Retirement

  1) Employee is eligible to receive pay for unused, accrued PTO bank time only if he/she has completed the initial six (6) month employment period.

\*    \*    \*    \*    \*    \*

  4) Employees receive a full accrual for the first pay period of employment regardless of whether or not a full first pay period is worked. Therefore, employees **will not** receive a PTO accrual for the final full or partial pay period worked.

\*    \*    \*    \*    \*    \*

*Id.* at 52.

The Manual also included a termination policy, which stated:

\*    \*    \*    \*    \*    \*

C. Final Wages and Paid Time Off (PTO)

1. It is necessary to process the Termination and Clearance Checklist forms as soon as possible to ensure final wages and accrued paid time off (PTO) are paid appropriately. Payment will be made in two separate checks on two separate paydays for all terminations.

2. Check # 1 includes wages for hours worked during the last pay period of employment minus any employee-authorized deductions, such as gift shop charges. This check will be issued on the payday of that working pay period.

3. Check # 2 includes payment for any eligible, accrued paid time off minus any employee-authorized deductions that were not previously processed. This check will be issued on the next regularly scheduled payday after the payment of check # 1.

*Id.* at 71.

Clarian terminated Reel and Dullen. Each member of the class earned a certain number of PTO hours during the course of their employment. Clarian paid the members of the class their accrued PTO fourteen days after the pay date in which Clarian paid each member of the class their wages earned for work performed during the last pay period in which they were employed by Clarian.

The Named Plaintiffs filed a complaint against Clarian as a class action pursuant to Ind. Trial Rule 23(a) and (b)(3) on behalf of "all former employees of [Clarian] who involuntarily separated from employment with [Clarian] and were paid their PTO wages on or after July 11, 2003." Appellee's Appendix at 3. The complaint alleged that the wage claims of the Named Plaintiffs had been referred to the attorney by the Indiana Attorney General's Office and the Indiana Department of Labor pursuant to Ind.Code § 22–2–9–4(b). In September 2005, Clarian filed a motion for summary judgment and argued that: (1) members of the class who failed to file a wage claim with the commissioner of labor are precluded from bringing a direct private action under the Wage Claims Statute; (2) wages for hours worked and accrued PTO are not treated the same under the Wage Claims Statute; (3) wages for hours worked and other types of compen-

sation need not be paid on the same day; and (4) Clarian's policy is not contrary to the intent of the Wage Claims Statute.[1] The trial court granted Clarian's motion for summary judgment.

The sole issue is whether the trial court erred by granting Clarian's motion for summary judgment. Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *AutoXchange.com, Inc. v. Dreyer and*

*Reinbold, Inc.*, 816 N.E.2d 40, 47–48 (Ind. Ct.App.2004).

■ The Named Plaintiffs argue that the Wage Claims Statute governs when Clarian must pay the PTO wages. According to the Named Plaintiffs, the unambiguous language of the Wage Claims Statute required Clarian to pay the accrued PTO pursuant to the Wage Claims Statute. Clarian argues that its Manual governs when the Named Plaintiffs are entitled to be paid the PTO. Thus, we will address whether the Wage Claims Statute or Clarian's Manual governs when the PTO wages must be paid.

■ Initially, we note that the Named Plaintiffs brought this claim under the Wage Claims Statute, Ind.Code § 22-2-9 (2004).[2] "The Wage Claims Statute references employees who have been separated from work by their employer and employees whose work has been suspended as a result of an industrial dispute." *St. Vincent Hosp. & Health Care Center, Inc. v. Steele*, 766 N.E.2d 699, 705 (Ind.2002) (citing Ind.Code § 22-2-9-2(a)(b)). "Claimants whose lawsuits have been initiated by the Attorney General or the Attorney General's designee are entitled to recover liquidated damages and attorney fees as set

---

1. The trial court set a hearing on Clarian's motion for summary judgment. *Reel v. Clarian Health Partners, Inc.*, 855 N.E.2d 343, 345 (Ind.Ct.App.2006). The Named Plaintiffs then filed a motion to certify the trial court's order setting a hearing on Clarian's motion for summary judgment. *Id.* The trial court certified the order and stayed proceedings. *Id.* at 346. On interlocutory appeal, we addressed the issue of "whether the trial court erred by setting a hearing on Clarian's motion for summary judgment before addressing class certification." *Id.* We held that Ind. Trial Rule 23 did not preclude the trial court from hearing Clarian's motion for summary judgment before addressing the certification of the class and that if the trial court granted Clarian's motion for summary judgment, Clarian would not be protected by res judicata

from suits by potential class members. *Id.* at 356.

2. In *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 702–705 (Ind.2002), the Indiana Supreme Court clarified the distinctions between the Wage Payment Statute and the Wage Claims Statute. The Wage Claims Statute references employees who have been separated from work by their employer and employees whose work has been suspended as a result of an industrial dispute. 766 N.E.2d at 705. By contrast, the Wage Payment Statute references current employees and those who have voluntarily left employment, either permanently or temporarily. *Id.*

forth in Indiana Code section 22–2–5–2." *Id.* (citing Ind.Code § 22–2–9–4(b)). The Wage Claims Statute provides that "[w]henever any employer separates any employee from the pay-roll, the unpaid wages or compensation of such employee shall become due and payable at regular pay day for pay period in which separation occurred[.]" I.C. § 22–2–9–2(a) (2004). Wages are defined as "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount." I.C. § 22–2–9–1 (2004). Neither party argues that the PTO wages involved in this case do not constitute wages under the Wage Claims Statute.[3]

The Named Plaintiffs argue that the statutory time dictates of the Wage Claims Statute are mandatory. "The first step in interpreting any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question." *St. Vincent Hosp. & Health Care Center, Inc.,* 766 N.E.2d at 703–704. If a statute is unambiguous, we must give the statute its clear and plain meaning. *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002). A statute is unambiguous if it is not susceptible to more than one interpretation. *Elmer Buchta Trucking, Inc. v. Stanley,* 744 N.E.2d 939, 942 (Ind.2001). However, if a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Bolin,* 764 N.E.2d at 204. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id.*

We find the Indiana Supreme Court's interpretation of the Wage Payment Statute in *Naugle v. Beech Grove City Schools,* 864 N.E.2d 1058 (Ind.2007), instructive. In *Naugle,* former employees of the Beech Grove City Schools brought a claim under the Wage Payment Statute, which provides, in part:

(a) Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee.

\*     \*     \*     \*     \*     \*

(b) Payment shall be made for all wages earned to a date not more than ten (10) days prior to the date of payment. However, this subsection does not prevent payments being made at shorter intervals than specified in this subsection, nor repeal any law providing for payments at shorter intervals. However, if an employee voluntarily leaves employment, either permanently or temporarily, the employer shall not be required to pay the employee an amount due the employee until the next usual and regular day for payment of wages, as established by the employer. If an employee leaves employment voluntarily, and without the employee's whereabouts or address being known to the employer, the employer is not subject to section 2 of this chapter until:

(1) ten (10) days have elapsed after the employee has made a demand for the wages due the employee; or

---

3.  Clarian argues that wages for hours worked and accrued PTO are treated differently under the Wage Claims Statute but not that the PTO wages are not wages under the Wage Claims Statute.

(2) the employee has furnished the employer with the employee's address where the wages may be sent or forwarded.

Beech Grove filed a motion for partial summary judgment and argued that the "Ten–Day Rule" in Subsection (b) of the Wage Payment Statute required a demand for payment before penal damages and attorney fees may be assessed but that no demand was made. 864 N.E.2d at 1062. The trial court granted Beech Grove's motion. *Id.*

On appeal, the court addressed Beech Grove's argument that the former employees had no claim under the Wage Payment Statute because they did not demand or request to be paid within ten days following a pay period. *Id.* at 1066. The court held that subsection 1(a) and 1(b) of the Wage Payment Statute "do not impose two distinct timing requirements. Rather the two subsections operate in concert: parties may freely agree to various pay periods under subsection 1(a). Subsection 1(b) supplies the maximum time limit within which employees must be paid after the end of the pay period." *Id.* "The Ten–Day Rule is in place to ensure that employees receive their pay in a timely fashion and to provide employers adequate time after the agreed upon pay period to calculate wages." *Id.* "Vacation pay is therefore not subject to the Ten–Day Rule until termination." *Id.* at 1067. "The time of payment of vacation pay is usually deferred because the accrual of vacation is unknown until termination of the employment." *Id.* "There is no legal requirement to compensate for unused vacation time," and "[a]bsent an agreement to the contrary, an employee is not entitled to accrued vacation pay until termination." *Id.* "But if vacation pay is to be compensated, it is deferred compensation in lieu of wages

and is subject to the provisions of the Wage Payment Statute." *Id.*

■ Here, the Wage Claims Statute, Ind.Code § 22–2–9–2(a), provides that "[w]henever any employer separates any employee from the pay-roll, the unpaid wages or compensation of such employee shall become due and payable at regular pay day for pay period in which separation occurred[.]" The Wage Claims Statute by its terms mandates compliance. *See Naugle*, 864 N.E.2d at 1065 (holding that the Wage Payment Statute "by its terms mandates compliance"). The PTO compensation vested when the Named Plaintiffs rendered their services. *See Die & Mold, Inc. v. Western*, 448 N.E.2d 44, 47–48 (Ind. Ct.App.1983) ("An agreement to give vacation pay to employees made before they perform their service, and based upon the length of service and time worked is not a gratuity but rather is in the form of compensation for services. And when the services are rendered, the right to receive the promised compensation is vested."). Thus, the Wage Claims Statute and not Clarian's policy governs the payment of the PTO wages. *See Naugle*, 864 N.E.2d at 1067 (holding that "if vacation pay is to be compensated, it is deferred compensation in lieu of wages and is subject to the provisions of the Wage Payment Statute."); *see also Highhouse v. Midwest Orthopedic Institute*, P.C., 807 N.E.2d 737, 740 (Ind.2004) ("An employer may not escape the [Wage Payment Statute] by obtaining the employee's agreement that wages are not payable within the statutorily prescribed times.").

Despite the language of the Wage Claims Statute, Clarian relies on *Die & Mold, Inc. v. Western*, 448 N.E.2d 44 (Ind. Ct.App.1983), and other cases, which rely on *Die & Mold, Inc.*,[4] to argue that its

---

4. Clarian cites to *Williams v. Riverside Cmty.*     *Corr. Corp.*, 846 N.E.2d 738 (Ind.Ct.App.

Manual governs the payment of the PTO wages. In *Die & Mold Inc.*, Die & Mold employed Paul Western from April 18, 1967, until February 27, 1981. 448 N.E.2d at 45. The person that hired Western informed him orally of the vacation policy: "after one year the employee receives one week paid vacation; after five years the employee receives two weeks paid vacation; and after ten years the employee receives three weeks paid vacation." *Id.* All vacations were required to be taken between June 15 and October 15. *Id.* No other terms or conditions concerning vacation pay ever were made known to him. *Id.* After Western was discharged, he filed a complaint against Die & Mold for vacation pay. *Id.* at 44–45. The trial court awarded pro rata vacation pay from the employment anniversary date of April 18 until the date of discharge on February 27. *Id.* at 45.

On appeal, "[m]uch, if not all, of Die & Mold's argument [was] premised upon the assumption that it conclusively proved at trial that it had a policy, and an agreement with its employees, that if they had been separated prior to their anniversary date, they were not entitled to the vacation pay." *Id.* at 46. However the evidence did not bear out Die & Mold's arguments. *Id.* Die & Mold cited *Dove v. Rose Acre Farms, Inc.*, 434 N.E.2d 931 (Ind.Ct.App. 1982). *Id.* at 47. This court distinguished *Dove* by holding:

Dove concerned a peculiar, very specific bonus contract which was apart from the regular employment contract. The bonus contract was wholly voluntary, and non-job dependent. We held that the terms must be complied with in order to receive the bonus pay. Here, the evidence and the finding of the court disclose no specific terms or policy. *Had such an agreement or published policy existed it would be enforceable.*

*Id.* at 47–48 (emphasis added). We held that because "vacation pay is additional wages, earned weekly, where only the time of payment is deferred, it necessarily follows that, absent an agreement to the contrary, the employee would be entitled to a pro rata share of it to the time of termination." *Id.* at 48.

The Named Plaintiffs argue that Clarian's reliance on *Die & Mold, Inc.*, and its progeny is misplaced.[5] We agree. *Die & Mold, Inc.*, and the other cases cited by Clarian addressed whether an employee is *entitled* to vacation pay or whether a published policy precludes an award of vacation pay. See *Williams v. Riverside Cmty. Corr. Corp.*, 846 N.E.2d 738, 747 (Ind.Ct.App.2006) (addressing employee's argument that she was "entitled" to any vacation pay she had accrued at the time of her termination and holding that the controlling precedent was *Die & Mold, Inc.*), *trans. denied; Mitchell v. Universal*

2006), *trans. denied; Mitchell v. Universal Solutions of North Carolina, Inc.*, 853 N.E.2d 953 (Ind.Ct.App.2006), *trans. denied; Damon Corp. v. Estes*, 750 N.E.2d 891 (Ind.Ct.App. 2001); and *Indiana Heart Assoc., P.C. v. Bahamonde*, 714 N.E.2d 309 (Ind.Ct.App.1999), trans. denied.

5. Clarian argues that *Taylor v. Cmty. Hosps. of Ind., Inc.*, 860 N.E.2d 1200 (Ind.Ct.App. 2007), *reh'g denied, trans. denied*, reinforced this court's prior holdings that an employer policy governed an employee's access to PTO benefits. We do not find *Taylor v. Cmty.*

*Hosps. of Ind., Inc.*, instructive because "[t]he benefits, PTO, the compensation for which was deferred, were actually paid while [the former employee] was still in the employ of [the employer]," and "[t]here was no untimely payment of wages in violation of the statute, because [the employee] was paid for her PTO prior to her termination." 860 N.E.2d at 1204. Here, unlike in *Taylor*, the Named Plaintiffs were not paid for their PTO prior to their termination and the Wage Claims Statute applies.

*Solutions of North Carolina, Inc.*, 853 N.E.2d 953, 958 (Ind.Ct.App.2006) (holding that pursuant to the employers' published policies, the employees were not "entitled" to payment for unused vacation days accrued prior to involuntary termination), *trans. denied;*[6] *Damon Corp. v. Estes*, 750 N.E.2d 891, 893 (Ind.Ct.App.2001) (addressing employer's argument that vacation pay was not earned until the employee's anniversary date and relying on *Die & Mold, Inc.*, to hold that a specific company policy indicated that employee would not have been "entitled" to receive his vacation pay until his anniversary date); *Ind. Heart Assoc. P.C. v. Bahamonde*, 714 N.E.2d 309, 312 (Ind.Ct.App.1999) (holding that the trial court erred by granting summary judgment to the employee because the company had a published policy declaring that an employee would not be "entitled" to accrued vacation if she were terminated

for gross misconduct), *trans. denied. Die & Mold, Inc.*, and the other cases cited by Clarian did not directly address the question presented by this case: once an employee is entitled to PTO wages and the employee is terminated, *when* must such wages be paid.

In conclusion, Clarian correctly points out that it would be within its right to completely deny payment of PTO to terminated employees. *See, e.g., Mitchell*, 853 N.E.2d at 958 (holding that pursuant to the employers' published policies, the employees were not "entitled" to payment for unused vacation days accrued prior to involuntary termination). However, having granted employees the right to their PTO upon termination, such PTO is a wage under the Wage Claims Statute. Thus, despite Clarian's policy to the contrary, Clarian must pay the PTO in a timely

---

6. Clarian also relies on *Mitchell*, to argue that the Named Plaintiffs "are entitled to PTO only pursuant to Clarian's published policy; without Clarian's policy, [the Named Plaintiffs] would have no legal claim to PTO in the first place." Appellee's Brief at 13. In *Mitchell*, this court addressed two employee / employer situations because the different cases raised the same question of law and the appeals were consolidated. *Mitchell*, 853 N.E.2d at 954 n. 1. One of the published policies stated that vacation time would not be paid upon termination if the termination was involuntary. *Mitchell*, 853 N.E.2d at 955. The other employer had a policy that stated that "[v]acation does not accrue pro-rata and employees are not paid for unused vacation time upon termination of employment." *Id.* at 956. Employees of both employers were involuntarily terminated and sought payment for unused vacation time. *Id.* at 958. On appeal, we held that pursuant to the employers' published policies, which the employees acknowledged they would follow, the employees were not entitled to payment for unused vacation days accrued prior to their involuntary termination. *Id.* In response to the employees' arguments regarding the employment handbooks and relevant employment contracts, this court held:

We need not analyze whether, how, or to what extent the policies in an employment handbook are enforceable against or by an at-will employee, for one very simple reason: "In this state, a party may not accept benefits under a transaction or instrument and at the same time repudiate its obligations." *In Re Estate of Palamara*, 513 N.E.2d 1223, 1228 (Ind.Ct.App.1987), *reh'g denied*. As the employers note, [the employees] accrued vacation days pursuant to the policies in the handbooks. If the policies are unenforceable, then [the employees] had no legal claim to vacation days in the first place. If they had a right to earn the vacation days pursuant to the policies in the handbooks, then the employers had a right to take the days away under any circumstances clearly elucidated in the published policy.

*Id.* at 959.

We find *Mitchell* distinguishable because in *Mitchell*, the issue was whether the parties were *entitled* to the vacation wages and not *when* the employees were entitled to the wages. Here, the Manual stated that employees were eligible to receive pay for unused accrued PTO time and Clarian makes no claim that the Named Plaintiffs were not eligible for accrued PTO wages.

manner as required in the Wage Claims Statute.

For the foregoing reasons, we reverse the trial court's grant of summary judgment to Clarian and remand for proceedings consistent with this opinion.

Reversed and remanded.

MAY, J. and BAILEY, J. concur.