Anne L. HICKMAN, Appellant–Plaintiff,

v.

STATE of Indiana, Indiana Department of Correction, and Steve Carter, Attorney General of the State of Indiana, Appellee–Defendants.

No. 49A04–0803–CV–184.

Court of Appeals of Indiana.

Oct. 23, 2008.

Ronald E. Weldy, Weldy & Associates, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Anne L. Hickman appeals the trial court's grant of summary judgment to the State of Indiana, the Indiana Department of Correction, and Steve Carter, the Attorney General of the State of Indiana (collectively, "the State"). Hickman raises three issues, which we consolidate and restate as whether the trial court erred by granting the State's motion for summary judgment. We affirm.

The relevant facts follow. Hickman had worked for the Indiana Department of Correction for several years when she was placed on an unpaid thirty-day suspension on March 28, 2003. At the time of her suspension, Hickman had accrued 212.5 paid vacation hours pursuant to 31 Ind. Admin. Code § 1–9–3(a), which provides:

Vacation leave with pay shall be earned by all full-time employees in the non-

merit service [1] at the rate of seven and one-half (7.5) hours for each full month of employment. Employees working at least half time, but no less than a full-time basis, shall earn vacation at the rate of three and three-fourths (3.75) hours a month. Vacation will not be credited to hourly, per diem, temporary, intermittent, contractual, or employees working less than half time.

After the thirty-day suspension, Hickman's employment was involuntarily terminated when she was dismissed effective April 27, 2003, and without payment for her accrued but unused vacation hours pursuant to 31 Ind. Admin. Code 1–9–3(f), which provides that "[u]pon separation from the service, in good standing, an employee shall be paid for unused vacation for a maximum of two hundred twenty-five (225) hours, plus overtime and holiday leave to the extent accumulated." 31 Ind. Admin. Code 1–10–4 provides that "[a]ny employee wishing to leave the non-merit service in good standing shall give the appointing authority at least two (2) weeks written notice in advance of separation." 31 Ind. Admin. Code 1–10–3(a) provides

that "[a] dismissed employee shall forfeit all accrued sick, personal, and vacation leave."

On October 10, 2003, Hickman filed a complaint arguing that the Department of Correction had a "legal obligation to pay her for unused vacation days upon her termination from employment [under] contract law and the Indiana Wage Claim Statute." [2] Appellant's Appendix at 11. The State filed a motion to dismiss, and Hickman filed a motion to amend her complaint. The trial court entered an order denying the State's motion to dismiss and granting Hickman's motion to amend complaint.[3]

The State then filed a motion for summary judgment arguing that Hickman was not entitled to payment for her accrued but unused vacation hours because she had been dismissed and was not in good standing. In her opposition to the State's motion for summary judgment, Hickman argued that 31 Ind. Admin. Code 1–10–3(a) was "an unenforceable penalty under Indiana law." *Id.* at 16. After a hearing, the trial court granted the State's motion

---

1. 31 Ind. Admin. Code § 1–1–1 defines "non-merit service" as:

   all public services in all offices and employments, except members of boards and commissions, of all persons in the executive department of state government under the jurisdiction and direction of the governor and the department of personnel pursuant to [Ind.Code § ] 4–15–1.8–1 as amended, and except those included in the state service as defined by the state personnel act [Ind.Code § ] 4–15–2.

2. The parties do not provide us with a copy of Hickman's complaint. According to the trial court's order, Hickman also brought a claim under the Wage Payment Statute, Ind.Code § 22–2–5–1, which she later withdrew.

3. The parties do not provide us with a copy of the State's motion to dismiss. In light of the trial court's order denying it, the State's mo-

tion to dismiss was presumably for failure to exhaust administrative remedies because Hickman had failed to use the grievance review procedure for state employees under Ind.Code § 4–15–2–35. The trial court's denial of the motion stated that the procedure under Ind.Code § 4–15–2–35 "is not a mandatory prerequisite to an unpaid wage claim by a discharged employee, who no longer is a 'regular employee.'" Appellant's Appendix at 61–62. Contrary to the trial court's order, we note that Ind.Code § 4–15–2–34 provides that "[a] regular employee who is dismissed shall have the right to appeal under [Ind.Code § 4–15–2–35]." Nonetheless, the trial court also found that the issues raised by Hickman in her complaint "are predominately [sic] legal in nature and do not require agency expertise." *Id.* at 62. The State did not appeal the trial court's denial of the motion, and the parties do not address it on appeal. Consequently, we will not address the issue.

for summary judgment, finding that the State "was not obligated to pay Hickman for accrued but unused vacation days upon her termination from employment." *Id.* at 13.

The issue is whether the trial court erred by granting the State's motion for summary judgment. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold,* 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974.

Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk,* 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

Hickman argues that the failure to pay her vested and earned vacation time constitutes a violation of the Wage Claims Statute, Ind.Code § 22–2–9–2.[4] *See* Appellant's Brief at 4. "The Wage Claims Statute references employees who have been separated from work by their employer and employees whose work has been suspended as a result of an industrial dispute." *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele,* 766 N.E.2d 699, 705 (Ind.2002) (citing Ind.Code § 22–2–9–2(a)(b)). The Wage Claims Statute provides that "[w]henever any employer separates any employee from the pay-roll, the unpaid wages or compensation of such employee shall become due and payable at regular pay day for pay period in which separation occurred[.]" *Reel v. Clarian Health Partners, Inc.,* 873 N.E.2d 75, 79 (Ind.Ct.App.2007) (quoting Ind.Code § 22–2–9–2(a)), *trans. denied.* Wages are defined as "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount." *Id.* (quoting Ind.Code § 22–2–9–1(b)).

We have held that vacation pay constitutes deferred compensation in lieu of wages and, thus, is subject to the provisions of the Wage Claims Act. *See Die & Mold, Inc. v. Western,* 448 N.E.2d 44, 46 (Ind.Ct.App.1983) (holding that the definition of vacation pay as "additional wages" is not incompatible with Ind.Code § 22–2–9–1(b)). Nonetheless, an employee's right to vacation pay is not absolute. *Ind. Heart Associates, P.C. v. Bahamonde,* 714 N.E.2d 309, 311 (Ind.Ct.App.1999), *trans. denied.* Rather, an employee is entitled to accrued vacation pay to the time of termination provided no agreement or published

---

**4.** In her brief, Hickman argues at length that she was an at-will employee of the State and that relevant provisions of the Indiana Administrative Code constituted the terms of her employment contract. *See* Appellant's Brief at 5–8. We agree with the State that Hickman "does not, however, explain how a determination of these issues affects the outcome of this case." Appellee's Brief at 6.

policy exists to the contrary. *Id.* at 311–312; *Baesler's Super-Valu v. Ind. Comm'r of Labor ex rel. Bender,* 500 N.E.2d 243, 245 (Ind.Ct.App.1986).

In *Bahamonde,* another panel of this court addressed a similar claim of a dismissed employee regarding paid vacation leave. However, the employee in *Bahamonde* brought her claim under the Wage Payment Statute, codified at Ind.Code § 22-2-5-1, rather than the Wage Claims Statute. 714 N.E.2d at 311. The Indiana Supreme Court has since clarified the relationship between the two statutes as follows:

> Although both the Wage Claims Statute and the Wage Payment Statute set forth two different procedural frameworks for wage disputes, each statute applies to different categories of claimants. The Wage Claims Statute references employees who have been separated from work by their employer and employees whose work has been suspended as a result of an industrial dispute. I.C. § 22-2-9-2(a)(b). By contrast, the Wage Payment Statute references current employees and those who have voluntarily left employment, either permanently or temporarily. I.C. § 22-2-5-1(b).

*St. Vincent,* 766 N.E.2d at 705. It appears that the employee in *Bahamonde* could not have brought her claim under the Wage Payment Statute, as she was not a current employee or one who had voluntarily left her employment. Nevertheless, we find the reasoning in *Bahamonde,* as applied to the Wage Claims Statute, instructive.[5]

Here, the conditions of Hickman's employment with the Indiana Department of Corrections were codified in the Indiana Administrative Code. 31 Ind. Admin. Code § 1-9-3(a) deals with vacation leave with pay and provides:

> Vacation leave with pay shall be earned by all full-time employees in the non-merit service at the rate of seven and one-half (7.5) hours for each full month of employment. Employees working at least half time, but no less than a full-time basis, shall earn vacation at the rate of three and three-fourths (3.75) hours a month. Vacation will not be credited to hourly, per diem, temporary, intermittent, contractual, or employees working less than half time.

31 Ind. Admin. Code 1-9-3(f) provides that "[u]pon separation from the service, *in good standing,* an employee shall be paid for unused vacation for a maximum of two hundred twenty-five (225) hours, plus overtime and holiday leave to the extent accumulated." (emphasis added). 31 Ind. Admin. Code 1-10-4 provides that "[a]ny employee wishing to leave the non-merit service in good standing shall give the appointing authority at least two (2) weeks written notice in advance of separation." 31 Ind. Admin. Code 1-10-3(a) provides that "[a] dismissed employee shall forfeit all accrued sick, personal, and vacation leave."

Thus, under the published policy of the State, dismissed state employees forfeit their accrued but unused vacation time. This published policy is contrary to the general entitlement of employees to accrued vacation pay. Because Hickman's

---

5. The Indiana Supreme Court has also clarified that "[c]laimants may proceed under the Wage Payment Statute by filing a complaint. In contrast, the Wage Claims Statute requires that a wage claim be submitted to the Department of Labor for administrative enforcement." *Naugle v. Beech Grove City Schools,* 864 N.E.2d 1058, 1061 n. 1 (Ind.2007) (citing Ind.Code § 22-2-9-4(a)). We note that the record does not reveal whether Hickman first submitted her claim to the Department of Labor for administrative enforcement. However, neither party raises this issue on appeal.

employment was terminated and she was not in good standing, by the express terms of the State's published policy, Hickman forfeited her accrued but unused vacation hours. *See, e.g., Bahamonde,* 714 N.E.2d at 312 ("Because of Heart Associates' published policy, Bahamonde did not have an automatic statutory right to her accrued but unpaid vacation pay."); *Mitchell v. Universal Solutions of North Carolina, Inc.,* 853 N.E.2d 953, 958 (Ind.Ct.App. 2006) (holding that, pursuant to the employers' published policies, the employees were not "entitled" to payment for unused vacation days accrued prior to involuntary termination); *trans. denied; cf. Reel,* 873 N.E.2d at 82 ("Clarian correctly points out that it would be within its right to completely deny payment of PTO to terminated employees.... However, having granted employees the right to their PTO upon termination, such PTO is a wage under the Wage Claims Statute.").

Hickman quotes the following language from *Bahamonde* in support of her argument:

> Heart Associates seems to imply that the existence of a written policy, standing alone, is sufficient to deny Bahamonde her accrued vacation pay. It is not. If this were so, then an employer could always avoid paying its involuntarily terminated employees their accrued vacation by simply asserting a violation of company policy whether or not the assertion was ever demonstrated to be true.

714 N.E.2d at 313. Hickman quotes this language out of context. In *Bahamonde,* the employer's personnel policy stated that an employee would not be eligible for payment of vacation time if "involuntarily terminated ... for unsatisfactory work performance, gross misconduct, or violation of any rule, policy or procedure." *Id.* at 311. The *Bahamonde* court held that the mere existence of a written policy was not sufficient to deny the employee her accrued vacation pay because the employer in that case also had to show that the employee had been dismissed for gross misconduct, as alleged by the employer. The *Bahamonde* court remanded because the issue was a disputed issue of material fact. *Id.* at 313. In the present case, however, the administrative code provision is operative only if the employee has been dismissed, and the parties do not dispute that Hickman was dismissed.

Hickman also cites out of context the following language from *Reel* in support of her argument:

> The PTO compensation vested when the Named Plaintiffs rendered their services. *See Die & Mold, Inc. v. Western,* 448 N.E.2d 44, 47–48 (Ind.Ct.App.1983) ("An agreement to give vacation pay to employees made before they perform their service, and based upon the length of service and time worked is not a gratuity but rather is in the form of compensation for services. And when the services are rendered, the right to receive the promised compensation is vested."). Thus, the Wage Claims Statute and not Clarian's policy governs the payment of the PTO wages. *See Naugle,* 864 N.E.2d at 1067 (holding that "if vacation pay is to be compensated, it is deferred compensation in lieu of wages and is subject to the provisions of the Wage Payment Statute.")....

873 N.E.2d at 80. *Reel* is distinguishable, however, because in that case, the issue was not *whether* the former employees were entitled to vacation time, but *when* they were entitled to vacation time. In *Reel,* the terms of the employee handbook conflicted with the Wage Claims Statute on the timing of benefits to which the employees were entitled, and we held that

the Wage Claims Statute governed that issue. *See id.* at 79, 82 n. 6.

■ Moreover, we are mindful of our holding in *Mitchell* that an employee who receives paid vacation time under an employer's policies is estopped from arguing that forfeiture provisions of those same policies are unenforceable:

"In this state, a party may not accept benefits under a transaction or instrument and at the same time repudiate its obligations." *In re Estate of Palamara,* 513 N.E.2d 1223, 1228 (Ind.Ct.App. 1987), *reh'g denied.* As the employers note, Hamilton and Mitchell accrued vacation days pursuant to the policies in the handbooks. If the policies are unenforceable, then Hamilton and Mitchell had no legal claim to vacation days in the first place. If they had a right to earn the vacation days pursuant to the policies in the handbooks, then the employers had a right to take the days away under any circumstances clearly elucidated in the published policy. *See id.* (party could not obtain benefits of contract while repudiating the obligations). *See also Raymundo v. Hammond Clinic Ass'n,* 449 N.E.2d 276, 283 (Ind.1983) (because "Dr. Raymundo accepted the benefits of the contract for approximately two and one-half years," he cannot repudiate its obligations); *Norlund v. Faust,* 675 N.E.2d 1142, 1151 (Ind.Ct.App.1997) ("Norlund was fully aware that the contract into which he entered was in violation of the statute. He acquiesced to that violation and may not now claim that the very same violation relieves him of his obli-

gations."), *clarified on other grounds on reh'g* 678 N.E.2d 421 (Ind.Ct.App.1997), *trans. denied* 690 N.E.2d 1180 (Ind. 1997); *Caito v. Indianapolis Produce Terminal, Inc.,* 162 Ind.App. 590, 596–97, 320 N.E.2d 821, 825 (Ind.Ct.App. 1974) (after acquiescing in the violation of the contract and accepting the benefits therefrom, Caito could not complain about the violation).

*Mitchell,* 853 N.E.2d at 959. The same reasoning applies in the present case, and we hold that, because Hickman accrued vacation hours under other provisions of the Indiana Administrative Code, she is estopped from arguing that 31 Ind. Admin. Code 1–10–3(a) is unenforceable.[6]

For the foregoing reasons, we affirm the trial court's grant of summary judgment to the State.

Affirmed.

BAKER, C.J., and MATHIAS, J., concur.

---

6. Hickman also likens 31 Ind. Admin. Code 1–10–3(a) to unenforceable penalty provisions in real estate contracts. The analogy does not hold, however, because, in the context of purchase agreements for real estate, a penalty is a "grossly disproportionate sum" imposed "to secure performance of the contract." *Rogers v. Lockard,* 767 N.E.2d 982, 991 (Ind.Ct.App. 2002). Here, there is no evidence that the forfeiture provision involved a grossly disproportionate sum imposed to secure performance of the contract, and we find Hickman's analogy unpersuasive.